## CATLIN ET AL., TRUSTEES, v. UNITED STATES.

No. 419.   Argued February 1, 2, 1945.—Decided February 26, 1945.

_____

*Messrs. Thomas S. McPheeters, Henry Davis* and *George D. Burroughs* submitted for petitioners.

*Mr. Ralph F. Fuchs,* with whom *Solicitor General Fahy, Messrs. J. Edward Williams* and *Vernon L. Wilkinson* were on the brief, for the United States.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

The proceeding is for the condemnation of land in Madison County, Illinois, under the War Purposes Act of 1917.[1] The question for review is whether orders entered in the

---

[1] Act of August 18, 1890, 26 Stat. 316, as amended by the Acts of July 2, 1917, 40 Stat. 241, and April 11, 1918, 40 Stat. 518, 50 U. S. C. § 171. The Act provides:

"That hereafter the Secretary of War may cause proceedings to be instituted in the name of the United States, in any court having jurisdiction of such proceedings for the acquirement by condemnation of any land, temporary use thereof or other interest therein, or right pertaining thereto, needed *for the site, location, construction, or prosecution of works for fortifications, coast defenses, military training camps, and for the construction and operation of plants for the production of nitrate and other compounds and the manufacture of explosives and other munitions of war and for the development and transmission of power for the operations of such plants;* such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted . . . And provided further, That when such property is acquired in time of war, or the imminence thereof, *upon the filing of the petition* for the condemnation of any land, temporary use thereof or other interest therein or right pertaining thereto to be acquired for any of the purposes aforesaid, *immediate possession thereof may be taken* to the extent of the interest to be acquired and the *lands may be occupied and used for military purposes* . . ." (Emphasis added.)

course of the proceedings are appealable as "final decisions" within the meaning of § 128 of the Judicial Code, as amended, 28 U. S. C. § 225 (a).[2]

The petition for condemnation was filed in the District Court March 31, 1942. The same day an order for immediate possession was entered ex parte. On November 12, 1942, pursuant to the Declaration of Taking Act of February 26, 1931,[3] the Secretary of War filed a declaration and deposited in court $43,579.00 as the estimated compensation for Tract ED–7, to which petitioners assert ownership as trustees. The court thereupon entered "judgment," likewise ex parte, decreeing that title had vested in the United States upon the filing of the declaration and making of the deposit, also declaring the right of just compensation "now vested in the persons entitled thereto," and holding the cause open for further "orders, judgments and decrees."

Thereafter, on August 2, 1943, an order for service of process by publication was entered, and in October following petitioners moved to vacate the "judgment" and to dismiss the petition as to Tract ED–7. After this the Government amended its petition [4] and petitioners filed

---

[2] Section 128 is in part as follows:

"The circuit courts of appeal shall have appellate jurisdiction to review by appeal final decisions—

"First. In the district courts, in all cases save where a direct review of the decision may be had in the Supreme Court under section 345 of this title."

[3] 46 Stat. 1421, 40 U. S. C. §§ 258a–258e. Material portions of the statute are set forth in the text of this opinion and the notes.

[4] Petitioners attacked the original petition for failure to set forth (1) the purpose of the acquisition or that it was for any purpose authorized by the act; (2) that the Secretary of War had found that the land was needed or (3) had requested the Attorney General to institute the proceeding to acquire it for such a purpose. Considering these objections jurisdictional, petitioners regard "all further proceed-

an amended motion to vacate and dismiss,[5] which the court denied. From this order and the order entering the "judgment" on the declaration of taking, petitioners appealed. The Circuit Court of Appeals held the orders not final decisions within § 128 and dismissed the appeal. 142 F. 2d 781. We granted certiorari, 323 U. S. 696, in order to resolve conflict upon this question among several Circuit Courts of Appeals.[6]

We think the judgment was right. Petitioners' motions raised issues grounded in contentions that the taking was not for a purpose authorized by the War Purposes Act.[7]

---

ings based upon the said petition" as "ineffective," including the filing of the first declaration of taking and the "judgment" entered pursuant to it.

The amendment added a new paragraph to the petition stating the lands were being taken for purposes described in the language of the statute and incorporated in the petition the letter of the Secretary of War requesting the Attorney General to institute the proceedings to acquire the land "for use in the establishment of the Granite City Engineer Branch Depot." This is the specific purpose which petitioners say does not come within any set forth in the statute, for which see note 1.

[5] The amended motion urged that the amendment of the petition, by incorporating the Secretary's statement of intended use for an engineer depot, caused the petition to show on its face that the use was not within those authorized by the act. Petitioners assert the amendment "came too late to validate" the "judgment."

[6] *Dade County* v. *United States,* 142 F. 2d 230 (C. C. A. 5), accords with the decision in this case. Contrary decisions were rendered in *City of Oakland* v. *United States,* 124 F. 2d 959 (C. C. A. 9), cert. denied, 316 U. S. 679; *United States* v. *243.22 Acres of Land,* 129 F. 2d 678 (C. C. A. 2), cert. denied, 317 U. S. 698; *Puerto Rico R. Co.* v. *United States,* 131 F. 2d 491 (C. C. A. 2).

Under the comparable provision of the 1929 act applicable in the District of Columbia, where special appeal may be allowed upon interlocutory orders, D. C. Code (1940) § 17–101, compare *Lee* v. *United States,* 58 F. 2d 879, with *Keyes* v. *United States,* 119 F. 2d 444.

[7] See notes 1, 4 and 5.

Accordingly they urged that neither petition stated a cause of action, the court acquired no jurisdiction of the cause or to enter the order relating to title, and it was error to deny the motion to vacate and to dismiss. Since the issue here is whether the orders are final, for purposes of appeal, we assume, though we do not decide, that the substantive issues have sufficient merit to warrant determination upon review. Even so, we think petitioners have mistaken their remedy.

Their right to appeal rests upon § 128 of the Judicial Code. This limits review to "final decisions" in the District Court. A "final decision" generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *St. Louis, I. M. & S. R. Co.* v. *Southern Express Co.*, 108 U. S. 24, 28. Hence, ordinarily in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including ownership and just compensation, as well as the right to take the property. This has been the repeated holding of decisions here.[8] The rule applies to review by this Court of judgments of state courts, in advance of determination of just compensation, although by local statute "judgments of condemnation," i. e., of the right to condemn particular property, are reviewable before compensation is found and awarded. *Wick* v. *Superior Court*, 278 U. S. 574, 575; *Public Service Co.* v. *Lebanon*, 305 U. S. 558, 671; cf. *Dieckmann* v. *United States*, 88 F. 2d 902. The foundation of this policy is not in merely technical conceptions of "finality." It is one against piece-

---

[8] *Luxton* v. *North River Bridge Co.*, 147 U. S. 337, 341; *Southern R. Co.* v. *Postal Telegraph Co.*, 179 U. S. 641, 643; *Grays Harbor Co.* v. *Coats-Fordney Co.*, 243 U. S. 251, 256; *Washington ex rel. McPherson Bros. Co.* v. *Superior Court*, 274 U. S. 726; *Ornstein* v. *Chesapeake & Ohio R. Co.*, 284 U. S. 572; cf. *Collins* v. *Miller*, 252 U. S. 364, 370; *United States* v. *Florian*, 312 U. S. 656.

meal litigation. "The case is not to be sent up in frag-
ments. . . ." *Luxton* v. *North River Bridge Co.*, 147
U. S. 337, 341. Reasons other than conservation of ju-
dicial energy sustain the limitation. One is elimination
of delays caused by interlocutory appeals.

The rule applies to proceedings under the War Purposes
Act of 1917.[9] That act does not purport to change or
depart from the generally prevailing rule concerning ap-
peals in condemnation proceedings. It is an amended
version of the 1890 act, under which from its enactment to
now that rule has been applied, except in the three de-
cisions of Circuit Courts of Appeals reaching the contrary
result, where, however, the Declaration of Taking Act of
1931 also was involved.[10] The 1917 act purports to au-
thorize no judgment except one "for the acquirement by
condemnation of any land," etc., for the purposes specified
or, necessarily, one finally denying this. The provision
for the proceedings "to be prosecuted in accordance with
the laws relating to suits for the condemnation of prop-
erty of the States wherein the proceedings may be in-
stituted . . ." had no purpose to make the right of appeal
in such proceedings depend upon and vary with the local
procedure in this respect, cf. *Wick* v. *Superior Court*,
*supra; Public Service Co.* v. *Lebanon*, *supra*, or to incor-

---

[9] No case has been found in which appeal was taken, or attempted
to be taken, under the 1890 and 1917 acts, from an order other than
the final judgment disposing of all issues raised in the proceeding, in-
cluding compensation. The uniform practice under those acts appears
to have been therefore to confine appeals to such orders. Only three
cases appear to have sought to raise, in appeals from final judgments,
the question of the right to condemn. See *Forbes* v. *United States*,
268 F. 273; *Chappell* v. *United States*, 81 F. 764, 160 U. S. 499; *Henry*
v. *United States*, 46 F. 2d 640. Numerous other cases involved appeals
on questions affecting compensation without raising question concern-
ing title or authority to condemn.

[10] Cf. note 6 and text beginning with the paragraph following note 12.

porate local ideas of "finality" in the application of § 128 to such suits. The language may be applied in other ways without introducing so much lack of uniformity into the application of § 128, if indeed the quoted provision has not been largely nullified by the Federal Rules of Civil Procedure in all respects concerning appeals.[11]

Furthermore, the 1917 act contemplated emergency action, to the extent that upon the filing of the petition immediate possession might be taken and the lands occupied "for military purposes" during war "or the imminence thereof." This purpose, it seems clear, would be largely defeated, if entry must be deferred until specific challenges to jurisdiction and the sufficiency of the petition are determined seriatim, not only by ruling of the trial court but by separate appeals from each ruling which, if sustained,[12] would end the litigation, but if lacking in merit could only prolong it. We find neither in the language nor in the purposes of the 1917 act an intent to authorize departure from the general course of applying § 128 in condemnation proceedings.

Indeed, we do not understand petitioners to urge that the 1917 act without more accomplishes the departure. They say rather that it does so when used in conjunction with the Declaration of Taking Act of 1931. It is the "judgment upon a declaration of taking" and the subsequent order denying their motion to vacate this "judgment" and to dismiss the proceedings which they contend are "final decisions" within § 128 and therefore appealable. It is "judgments" of this character which the decisions of Circuit Courts of Appeals, upon which petitioners rely,

---

[11] "In proceedings for condemnation of property under the power of eminent domain, these rules govern appeals but are not otherwise applicable." Rule 81 (a) (7).

[12] See *United States* v. *Carey*, 143 F. 2d 445; *United States* v. *Marin*, 136 F. 2d 388.

have involved. One of them relied expressly upon the 1931 act as being intended "to sever the taking of title and possession from controversies as to valuation, and to provide a procedure whereby the United States might be speedily and conclusively vested with title and possession" and therefore as having a "final and immediate effect on property rights" which "obviously should be reviewable at once, without the necessity of awaiting the outcome of long drawn out controversies as to valuation." *Puerto Rico R. Co.* v. *United States,* 131 F. 2d 491, 494. The reason stated might afford ground for Congress to provide a special appeal. However, we do not think the reason accords with the statute's provisions or their effect. Consequently it gives no ground for believing that Congress has provided a separate appeal.

We dispose shortly of the motion, or that part of it, which was directed at dismissal of the proceedings, in so far as it may require treatment separately from the motion to vacate the "judgment," if it does so at all. Had this motion been granted and judgment of dismissal been entered, clearly there would have been an end of the litigation and appeal would lie within § 128. *United States* v. *Carey,* 143 F. 2d 445; *United States* v. *Marin,* 136 F. 2d 388. But denial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable. Cf. *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21. See also *Dieckmann* v. *United States,* 88 F. 2d 902. Certainly this is true whenever the question may be saved for disposition upon review of final judgment disposing of all issues involved in the litigation or in some other adequate manner. As will appear, we think such a remedy is available in this case.

The "judgment" and the order denying the motion to vacate it stand no better. The 1931 act, like that of 1917, contains no language purporting to change the general rule relating to appeals in condemnation proceedings.

Section 1, which is the basic section, makes no express reference to appeals.[13] Section 2 implies the contrary ef-

[13] Because of its importance, the Section is set forth here in full, except for the concluding paragraph which is quoted in note 14:

"An Act *To expedite the construction of public buildings and works* outside of the District of Columbia *by enabling possession and title* of sites *to be taken in advance of final judgment* in proceedings for the acquisition thereof under the power of eminent domain.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That *in any proceeding* in any court of the United States outside of the District of Columbia which has been or may be *instituted* by and in the name of and under the authority of the United States *for the acquisition of any land* or easement or right of way in land for the public use, *the petitioner may file in the cause,* with the petition or at any time before judgment, *a declaration of taking* signed by the authority empowered by law to acquire the lands described in the petition, *declaring that said lands are thereby taken* for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

"(1) A statement of the authority under which and the public use for which said lands are taken.

"(2) A description of the lands taken sufficient for the identification thereof.

"(3) A statement of the estate or interest in said lands taken for said public use.

"(4) A plan showing the lands taken.

"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

"*Upon the filing said declaration of taking and of the deposit in the court,* to the use of the persons entitled thereto, *of the amount of the estimated compensation* stated in said declaration, *title to the said lands* in fee simple absolute, or such less estate or interest therein as is specified in said declaration, *shall vest in the United States of America, and said lands shall be deemed to be condemned* and taken for the use of the United States, *and the right to just compensation for the same shall vest in the persons entitled thereto;* and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the

fect. It provides: "No appeal in any such cause nor any bond or undertaking given therein shall operate to prevent or delay the vesting of title to such lands in the United States." While the section does not in terms deny the right of appeal contended for, neither does it confer that right. The possibility of delaying or preventing the vesting of title by appeals was explicitly in the mind of Congress, when it included this section. If it had thought granting an earlier appeal than the existing procedure allowed, upon the severed issue of the right to take the property, would expedite the taking or the vesting of title or the proceedings in any other manner, slight additional words would have made provision for such an appeal. The omission, and the clear import of the language used, are against the implication that separate appeals were to be allowed.

This seems reinforced by § 4. It makes the right to take possession and title "in advance of final judgment" *additional* to other rights, powers or authority conferred by federal or local law, and expressly states that this right "shall not be construed as abrogating, limiting, or modifying any such right, power, or authority." One of the rights of the Government under preexisting federal law was the right not to have the proceeding, or the taking of

---

date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency." (Emphasis added.)

possession,[14] delayed by separate appeals over issues of title or taking.[15] Its right was rather to have these issues determined with others in the final judgment dispositive of the whole cause. This right, we think, was guarded by § 4 against being construed as having been abrogated, limited or modified, by virtue of the *additional* right conferred "to take possession and title *in advance of final judgment.*" (Emphasis added.) Other provisions of the statute, as will appear, support the same conclusion.

Moreover, the statute does not purport in terms to authorize such a "judgment" as was entered in this cause or to make its entry the event upon which title is changed, if so summary a procedure could be valid. The "judgment" apparently was entered ex parte, prior to service of process or publication of notice. Cf. *Pennoyer* v. *Neff*, 95 U. S. 714. By the terms of § 1, "Upon the filing said declaration of taking [in the condemnation proceeding] and of the deposit in the court . . . title . . . shall vest in the United States . . . and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein . . ."[16]

---

[14] This was authorized by the Act of 1917, cf. note 1 above, as well as by the Act of 1931 in the concluding paragraph of § 1, which is as follows:

"Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

[15] See note 9.

[16] See note 13 for the complete text.

The exact effect of these provisions is not entirely clear. But we find nothing in the statute to indicate that Congress intended to deprive the owner of all opportunity to challenge the validity of the taking for departure from the statutory limits. Such a purpose cannot be implied from the provision for transfer of title itself and the fact that the specific references to the final judgment in § 1 speak only concerning compensation. Those references, we think, are counterbalanced by other provisions and considerations, in so far as they may be thought to exclude matters of title from the final adjudication.

We think the purpose was to leave intact the owner's remedy existing before the statute was adopted. For one thing, the statute is not an independent one for condemnation. It provides for no new condemnation proceeding. It merely affords steps ancillary or incidental to suits brought under other statutes; and was so used in this case in conjunction with the suit brought under the Act of 1917. Its declared purpose is to expedite, in the cases to which it applies, the construction of public buildings and works "by enabling possession and title of sites to be taken *in advance of final judgment* in proceedings for the acquisition thereof under the power of eminent domain," (emphasis added) as the title states, and it applies to "any proceeding . . . instituted . . . under the authority of the United States for the acquisition of any land . . . for the public use . . ." § 1. The procedure clearly is ancillary to the main condemnation proceeding, cf. *United States* v. *17,280 Acres of Land,* 47 F. Supp. 267, 269, is intended to dovetail with it and by § 4 is declared expressly to provide rights which are to be "in addition to" preexisting rights and are not to "be construed as abrogating, limiting, or modifying" them. This provision, inserted primarily to safeguard the Government's interest, is not expressly so limited; and we think it may be applied also to safeguard

the owner's preexisting rights where doing this will not be in essential conflict with the additional rights validly conferred on the Government. This would be done by preserving his preexisting right of appeal.

While the language and the wording of the act are not wholly free from doubt, we see no necessary inconsistency between the provisions for transfer of title upon filing of the declaration and making of the deposit and at the same time preserving the owner's preexisting right to question the validity of the taking as not being for a purpose authorized by the statute under which the main proceeding is brought. That result may be reached if the statute is construed to confer upon the Government, upon occurrence of the events specified, only a defeasible title in cases where an issue concerning the validity of the taking arises. So to construe the act would accomplish fully the purposes for which it was adopted in the large number of cases where no such issue is made. In others this would go far toward doing so, for not all such issues will be followed through to final decision or, if so followed, will turn out adversely to the Government. The alternative construction, that title passes irrevocably, leaving the owner no opportunity to question the taking's validity or one for which the only remedy would be to accept the compensation which would be just if the taking were valid, would raise serious question concerning the statute's validity. In any event we think it would run counter to what reasonable construction requires.

Some stress is placed upon the provisions of §§ 3 and 5 relating to irrevocable commitment of the United States to pay the amount ultimately to be awarded,[17] together

---

[17] Section 3 is set forth in note 18. Section 5 is as follows:

"In any case in which the United States has taken or may take possession of any real property during the course of condemnation proceedings and in advance of final judgment therein and the United

with the provision of § 1 authorizing award of more than the amount deposited as estimated compensation, as indicating a purpose to make the transfer of title irrevocable upon the filing of the declaration and the making of the deposit.[18]   From the fact that the Government may become irrevocably committed to pay, it does not follow that the owner is irrevocably committed to submit to the taking, since the statute's terms are not *in pari materia* in this respect.   Neither § 3 nor § 5 purports to bind the owner irrevocably.   On the contrary, § 5 deals only with authority to expend appropriated funds for demolition of existing structures and construction of new ones; and the concluding proviso, requiring the opinion of the Attorney General that "title has been vested in the United States or all persons having an interest therein have been made parties to such proceeding and will be bound *by the final judgment therein,*" (emphasis added) before the funds are expended, seems clearly to contemplate that title is not indefeasibly vested in the United States merely by following the administrative procedure.   Final judg-

---

States has become irrevocably committed to pay the amount ultimately to be awarded as compensation, it shall be lawful to expend moneys duly appropriated for that purpose in demolishing existing structures on said land and in erecting public buildings or public works thereon, notwithstanding the provisions of section 355 of the Revised Statutes of the United States: *Provided,* That in the opinion of the Attorney General, the title has been vested in the United States or all persons having an interest therein have been made parties to such proceeding and will be bound by the final judgment therein."

[18] Including or following the finding required by § 3, which provides:

"Action under this statute irrevocably committing the United States to the payment of the ultimate award shall not be taken unless the chief of the executive department or agency or bureau of the Government empowered to acquire the land shall be of the opinion that the ultimate award probably will be within any limits prescribed by Congress on the price to be paid."

ment in "such proceeding," that is, the main condemnation suit, is necessary for that purpose. The operation of §§ 3 and 5 is to cut off the Government's right to abandon the proceedings. It is not to compel the owner to submit to unauthorized takings.

Accordingly, in our opinion the right of the owner to challenge the validity of the taking, for nonconformity with the prescribed statutory purposes, was not destroyed by the 1931 act. Nor was the right to do this upon appeal, existing before that act was adopted, affected. No such "severance" was made as the court deciding the *Puerto Rico* case thought was created. No new right of separate appeal was given. The preexisting right of appeal, including appeal on grounds relating to validity of the taking, remained in force to be exercised when and only when final judgment, disposing of the cause in its entirety, has been rendered. The statute makes no other explicit provision. Nor is one so clearly implied that we can make it. The weightier implications are the other way.

We have not discussed other issues presented or suggested in the briefs or argument, since that has not been necessary to the disposition of this cause. These include the question whether, when possession has been taken and damage has been done to the premises in the course of proceedings not authorized, the remedy by appeal is adequate. That issue has not been made in this case, since the grounds urged rest upon the provisions of the 1931 act relating to title and their effect, through the proceedings had, upon the petitioners right. They do not relate simply to the taking of possession, the right to take it or damages resulting from exercise of that right, apart from the question of title. Possession in this case had been taken, pursuant to the terms of the 1917 act, prior to the time of the purported transfer of title. It will be time enough to con-

sider the question concerning adequacy of the appeal or possible existence of other remedy affecting such a case when it arises.

The judgment is

*Affirmed.*

Mr. Justice Roberts and Mr. Justice Douglas concur in the result.