**TELLER ENVIRONMENTAL SYSTEMS, INC., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Appeal No. 85–2676.**

United States Court of Appeals, Federal Circuit.

Oct. 1, 1986.

Brian M. Hurley, Rackemann, Sawyer & Brewster, Boston, Mass., argued for appellant. With him on the brief was A. James Casner, III.

Howard Lipper, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett, Asst. Director and Thomas W. Petersen, Asst. Director; Ed Connelly, Office of the Gen. Counsel, Dept. of the Navy, Washington, D.C., William H. Mahn, U.S. Navy, San Francisco, Cal., of counsel.

Before NIES, BISSELL and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

## DECISION

Teller Environmental Systems, Inc. (Teller) appeals from the decision of the Armed Services Board of Contract Appeals (ASBCA or board), ASBCA Docket No. 25550, holding Teller liable to the government for correcting defective repair work performed by Teller. Although the contracting officer determined the amount of damages, the board did not, but instead "remanded" the case to the parties for such determination. We hold that this is not a final decision of the board, as required by 28 U.S.C. § 1295(a)(10) (1982) to give this court appellate jurisdiction, and dismiss without prejudice.

## OPINION

### I.

On May 30, 1974, the United States Navy (Navy) awarded Teller a contract for furnishing and installing equipment for cleansing exhaust gases emitted by engines under test in Navy jet engine facilities located in Norfolk, Virginia, and Jacksonville, Florida. During the course of performance, one of Teller's workmen accidentally caused a fire that damaged the concrete of one of the exhaust stacks of the Norfolk facility in which Teller's equipment was being installed. Teller acknowledged responsibility for the accident and carried out repairs to the concrete according to instructions that had been approved by the Navy. On or about August 16, 1976, the Navy

informed Teller that its repair work was acceptable. Teller then completed its contract and requested payment of the unpaid balance of the contract price.

At a later point in time, not specified in the record, "cracking" began to appear in the repaired surface of the exhaust stack. In a letter to Teller dated January 16, 1979, the Navy took the position that there were defects in Teller's performance of the repair work and requested Teller to submit its plan for correcting these defects. When Teller did not agree that it was responsible for the failure of the repairs, the Navy undertook an extensive investigation to determine the causes of the failure. By letter dated December 3, 1979, the Navy informed Teller that it had concluded, based upon reports of consultants, that Teller was responsible for the failure of the repairs and inquired of Teller what action it intended to take to provide adequate repairs. Teller responded on January 9, 1980, rejecting the Navy's finding that it was responsible for the failure. The Navy then developed specifications for doing the necessary corrective work and awarded a contract to be performed by another contractor. By October 31, 1980, the corrective work was completed under that contract and accepted and paid for by the Navy.

Despite repeated demands for the unpaid balance due under its contract totalling approximately $21,100, the Navy delayed paying Teller. On June 28, 1979, Teller was informed by the Navy that there would be no further payments under the contract until the matter of liability for correcting the defects in the repair of the fire damage was determined. Teller thereafter submitted a formal claim for the unpaid contract price to the contracting officer. The Navy, by way of offset and for affirmative relief, asserted damages against Teller for the defective repair work. On October 3, 1980, the final decision of the contracting officer (CO) allowed the Navy's offset against Teller's request for payment of the unpaid contract price and assessed the Navy's affirmative claim for damages against Teller in the net amount of $80,660.[1] Teller did not agree with this decision and timely appealed to the board.[2]

On March 28, 1985, the board rendered a decision adverse to Teller on the question of liability for the 1980 corrective work. The board determined that there were latent defects in the repair work performed by Teller on account of the fire damage, and held Teller liable under the terms of the contract for the costs incident to the performance of the corrective work. The allowed claim was then remanded to the parties for determination of the amounts due the government.

In its decision, the board stated that there was only a single claim at issue, relating to Teller's negligent repair work, which involved several items of damages. Noting its *de novo* jurisdiction, 41 U.S.C. § 605(a) (1982), to review the contracting officer's decision, the board held that it could consider additional items of damages not presented to the contracting officer so long as the increased damages were within the scope of the claim.

## II.

As an initial matter, the government has raised the issue of the court's jurisdiction to hear this appeal because the decision of the board determined only the liability of Teller, leaving the amount of damages payable to the government to be decided pursuant to the remand to the parties. It contends this is not a final decision of the

---

1. The award to the government included the following items of cost: $28,770 paid for services to prepare a report on the causes of the repair failure and for preparation of reperformance specifications, $63,700 for performance of the renewal work, $8,653 for removal of debris and rubble of the fire and certain extended overhead costs of delay occasioned by the fire, and $550 for repair of an access door.

2. The answer filed by the government in response to Teller's appeal to the board asked for a net increase in damages of $43,700 due to the fact that the contract price for the reprocurement had been increased by at least that amount over the $63,700 allowed by the contracting officer.

board within the meaning of 28 U.S.C. § 1295(a)(10) (1982).[3]

Teller notes preliminarily that uncertainty about the finality of the board's decision, resulting from the board's practice of bifurcating the issues of entitlement and quantum, presents a procedural dilemma for a contractor. By waiting to appeal until there is an order or decision to pay a specific amount, a contractor runs the risk of being barred by the statutory time limit for appeal if the earlier liability determination constitutes a final decision. On the other hand, filing an appeal after the liability determination can, at most, result in a dismissal of the appeal without prejudice. This reasoning led Teller to file an appeal from the board's decision of liability.

Teller, nevertheless, believes that the liability determination should be considered a final decision because "there is nothing left before the Board for it to decide ... and nothing in the record ... suggests that the Board has in any sense retained jurisdiction over the matter." In Teller's view, the board's "remand" to the parties makes it clear that the unresolved damages question is not before the board. And thus, Teller contends that the liability decision of the board is separately appealable.

The government counters with arguments that the statutory language clearly requires liability and damages to be treated as part of the same claim, that courts and boards have adopted this treatment, and that judicial economy favors a decision on both questions prior to appeal.

## III.

The doctrine of "finality," under the historic federal rule, has generally allowed appellate review only where a judgment has wholly disposed of a case, adjudicating all rights and ending litigation on the merits. *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1054, 79 L.Ed.2d

288 (1984); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373, 101 S.Ct. 669, 672, 66 L.Ed.2d 571 (1981); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). For purposes of district court review under 28 U.S.C. § 1291, a final decision is one which "leaves nothing for the trial court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). It is well recognized that the requirement of finality is founded upon a policy that stands against piecemeal litigation and delays caused by appeals of nonfinal decisions. *Id.* at 233, 65 S.Ct. at 633. *See Cabot Corp. v. United States*, 788 F.2d 1539, 1542 (Fed.Cir.1986); *Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399, 401 (5th Cir.1984) (*en banc*).

In line with these principles, a judgment encompassing both liability and damages has been the prerequisite of appellate review. Thus, in *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976), the court held that the issue of damages and liability are a single claim and that both must be resolved to constitute a final decision within the meaning of 28 U.S.C. § 1291. *See McGourkey v. Toledo & Ohio Railway*, 146 U.S. 536, 545, 13 S.Ct. 170, 172, 36 L.Ed. 1079 (1892). Without a determination of damages, other circuit courts have consistently held that finality is lacking, thus precluding appellate jurisdiction under 28 U.S.C. § 1291. *See Newpark Shipbuilding & Repair, Inc.*, 723 F.2d at 401; *Freeman United Coal Mining v. Director, Office of Workers' Compensation Programs, United States Department of Labor*, 721 F.2d 629, 630 (7th Cir.1983), and cases cited therein.

Teller recognizes that in the usual district court case the issues of liability and damages are resolved in the same proceed-

---

**3.** 28 U.S.C. § 1295(a)(10) (1982) provides:

(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

\* \* \* \* \* \*

(10) of an appeal from a final decision of an agency board of contract appeals pursuant to section 8(g)(1) of the Contract Disputes Act of 1978 (41 U.S.C. § 607(g)(1)).

ing and that the final judgment entered addresses all issues, but urges that the administrative setting can be distinguished. It points to the practice of the board in separating the damages issue for remand after it determines liability. According to Teller, "the Board's decision ends its involvement in the litigation and leaves nothing for it to do." Teller concludes that "[b]ecause it is an administrative body, there is no execution of its decision."

Even though there may be no " 'precise congruence' between the 'classical jurisdictional requirements' applied to appeals from district courts and the jurisdictional standards applicable to review of administrative proceedings," *Sun Shipbuilding and Dry Dock Co. v. Benefits Review Board,* 535 F.2d 758, 760 (3d Cir.1976) (per curiam), the circumstances referenced by Teller do not warrant application of a less restrictive finality rule in this case.

### IV.

Under the Contracts Dispute Act of 1978, 41 U.S.C. § 601ff (1982) (CDA), all contract claims, whether by contractor against the government or vice versa, must be submitted to the contracting officer for decision.[4] The contracting officer's decision is subject to review by the appropriate agency board of contract appeals, as provided in 41 U.S.C. § 607.[5] Thus, an important focal point in ascertaining finality of a board's decision is the scope and extent of the contracting officer's decision.

In this case, the contracting officer was presented with the Navy's claim asserting the liability of Teller as well as the elements of cost making up the total damages sought. Both issues were specifically decided by the contracting officer and both were the subject of appeal to the board. *Cf. Dewey Electronics Corp. v. United States,* 803 F.2d 650 (Fed.Cir.1986). The opinion of the board dispels any doubt that it considered both the liability and the damages issues to be before it for decision. The board considered as part of the same claim "all demands arising out of 'essentially interrelated conduct or services and the same or closely connected facts,' " and determined that a single claim had been presented to it for "appellant's failure to carry out its duty under the contract to properly repair the damage to the existing facilities caused by its negligence." It went on to say: "The individual costs alleged to have been incurred by the Government as a result of that failure are not in the nature of separate claims. These are, instead, elements of damage associated with that claim." The opinion further dwelt at some length and approved the Navy's assertion of increased damages before the board. The board then discussed the allowability of each of the several elements of damages claimed by the Navy, although it ultimately "remanded" to the parties the determination of reasonable damages.

Under these circumstances, we agree and accept the board's characterization that this case involves only a single claim and conclude that both the entitlement and quantum aspects of that claim were before the board. The contracting officer's decision covered both aspects of the claim and the board's jurisdiction is to review that decision. *See* 41 U.S.C. § 607. In dealing specifically with both liability and amount of damages in its decision, the board recog-

---

**4.** 41 U.S.C. § 605(a) provides in pertinent part:
(a) Contractor claims
 All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor....

**5.** Section 607 provides that the agency board has "jurisdiction to decide any appeal from a *decision of a contracting officer.*" (Emphasis added.) Section 609, dealing with review by the United States Claims Court, provides that "in lieu of appealing the decision of a contracting officer ... to an agency board, a contractor may bring an *action directly on a claim* in the United States Claims Court...." (Emphasis added.)

nized that the scope of its review covered both issues. By "remanding" the government's claim to the parties for a determination of the damages, the board did not completely decide the case before it.

The practice of the board of separating the entitlement issues from the quantum issues in its proceedings is a recurring theme of Teller's argument. It contends that this practice should be given controlling effect to make the board's partial decision on the liability issue a final decision for appeal purposes. Under the facts of this case, we do not find this argument to be persuasive.

The controversy here is not typical of the contract issues normally presented to the board and in which the bifurcation practice occurs. Most petitions for review to the board follow the denial of a contractor's claim by the contracting officer. Because his decision is adverse, the contracting officer does not find it necessary to determine any amounts. On petition to the board for review of that decision, therefore, the only issue is whether the contracting officer's decision denying liability was erroneous. The board is not at that point presented with, and has no occasion to consider, the question of the amount of the price adjustment claimed by the contractor. *See Dewey Electronics Corp. v. United States,* 803 F.2d 650 (Fed.Cir.1986).

That is not the situation in this proceeding. As discussed, the contracting officer expressly determined not only that Teller was liable to the government for the allegedly faulty repair work, but also the specific amount of damages due the government. And the board considered and dealt with both issues in its opinion, even though the ultimate determination of the amount of damages was "remanded" to the parties. We do not consider this "remand" to the parties to be a transfer, or a cessation, of the board's jurisdiction over the case. It is more in the nature of a direction to the parties to negotiate the amount of damages consistent with the board's analysis of the various costs and to come back to the

board with an agreed amount or for resolution of any dispute if agreement cannot be reached.

The board having failed to determine the amount of liability, its decision lacks finality for purposes of 28 U.S.C. § 1295(a)(10) and, in the absence of jurisdiction, we dismiss without prejudice.

DISMISSED.