**TELEDYNE CONTINENTAL MOTORS, GENERAL PRODUCTS DIVISION, Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 89–1599.**

United States Court of Appeals, Federal Circuit.

July 2, 1990.

---

**1580**

Thomas L. Patten, Latham & Watkins, of Washington, D.C., argued for appellant. With him on the brief were Everett C. Johnson, Jr., Franklin G. Snyder and Lauren Battaglia.

John S. Groat, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Helene M. Goldberg, Asst. Director. Also on the brief was Gary Smith, Defense Logistics Agency, Cleveland, Ohio, of counsel.

Before RICH, MAYER and PLAGER, Circuit Judges.

## ORDER

MAYER, Circuit Judge.

Teledyne Continental Motors, General Products Division, appeals a decision of the Armed Services Board of Contract Appeals, 89–2 B.C.A. ¶ 21,780, 1989 WL 46978 (1989), denying-in-part, sustaining-in-part, and remanding a decision of the administrative contracting officer that Teledyne's use of active employee head count as the sole basis for allocating pension costs between two of its divisions does not comply with Cost Accounting Standards (CAS) 403 and 413. We dismiss the appeal for lack of jurisdiction.

## Background

Teledyne Continental Motors manufactures tank and airplane engines for military and industrial application at two plants in Muskegon, Michigan, established as separate divisions called the General Products Division (GPD) and the Industrial Products Division (IPD), respectively. Each division manufactures engines both for the government and for commercial customers. The government reimburses Teledyne for the pension costs allocable to work performed under its government contracts. Therefore, the apportionment of Teledyne's pension costs between its two Muskegon divisions affects the share of these costs born by the government.

Teledyne allocates its pension costs according to the number of employees working in each plant, a method known as the "active employee head count." In 1979, following an audit of Teledyne's costs for 1976–77, the administrative contracting officer notified Teledyne of his initial finding that its pension cost allocation method did not comply with CAS 403 (Allocation of Home Office Expenses to Segments), 4 C.F.R. § 403, and CAS 413 (Adjustment and Allocation of Pension Costs), 4 C.F.R. § 413. On February 1, 1980, the administrative contracting officer issued his final decision of noncompliance. He directed Teledyne to compute its pension costs separately for GPD and IPD and to remit to the government $2,700,000, the amount he determined was overcharged for calendar year 1979 because Teledyne did not calculate pension costs separately for the two Muskegon divisions. The contracting officer later reduced the overcharge to $1,627,000.

Teledyne appealed to the board. The parties selected two CAS-covered contracts as test cases and stipulated the issue to be: "Does the active employee head count method currently used by Teledyne for allocating the following elements of pension cost comply with CAS 403, 412 and 413: (1) past service costs; (2) supplemental pension benefits; and (3) retirement bonus." The parties also asked the board to determine whether any of the alternative cost allocation methods suggested by the government complied with the Cost Accounting Standards.

The board made extensive findings of fact and drew the following conclusions: (1) CAS 413.50(c)(1) does not mandate the use of the active employee head count as the base for allocating the past service, supplemental benefit and retiree bonus components of pension cost; (2) with respect to past service cost, the requirement of CAS 413.50(c)(1) would be satisfied by the use of earned service credits as the allocation base, and both earned service credits and the active employee head count should be included in the allocation base to satisfy the requirement of CAS 403; * (3) supplemental benefit and retiree bonus costs should be allocated according to service credits earned by retirees at the respective divisions to satisfy the requirement of CAS 413.50(c)(1); and (4) use of the active employee head count as the allocation base for retiree bonus cost complied with CAS 403, but this standard requires the use of both earned service credits of retirees and the active employee head count as the allocation base for supplemental benefit cost.

Because neither party proposed alternative formulas that incorporated the factors required to allocate all pension cost components properly, the board remanded the case to the parties for the formulation of an appropriate allocation base. It ordered Teledyne to submit a proposal to the contracting officer within 60 days and the contracting officer to act on Teledyne's proposal within 90 days. If the parties failed to agree on an allocation base, the matter would be resubmitted to the board for final resolution. 89–2 B.C.A. ¶ 21,780 at 109,-593. Teledyne appeals, asking this court to hold that the active employee head count is the appropriate base for allocating all of the disputed components of pension cost. The government says we have no jurisdiction.

### Discussion

The premise for the government's challenge to our jurisdiction over Teledyne's appeal is that the decision of the board is not a "final decision of an agency board of contract appeals" under 28 U.S.C. § 1295(a)(10) because the board merely ruled on the issues presented to it in an interlocutory manner. It did not decide finally whether the government is entitled to the money it claims and which was awarded by the contracting officer in the appealed decision. Teledyne responds that the board's determination of CAS noncompliance is a final, appealable order directing it to change its method of allocating pension costs and that the board disposed of every issue before it, leaving nothing of the contracting officer's decision to be resolved.

We have jurisdiction under section 1295(a)(10) to review only final decisions of the boards of contract appeals. *United States v. W.H. Moseley Co.*, 730 F.2d 1472, 1474 (Fed.Cir.1984). A final decision is one which " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) and *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). "This final judgment rule requires that 'a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.' " *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288

---

* The board determined that CAS 403 was applicable to Teledyne's contracts as of 1 January 1974 and CAS 413 was applicable as of 1 January 1979.

(1983) (quoting *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 374, 101 S.Ct. at 673).

■ The Supreme Court has identified several important interests served by the final judgment rule:

It helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the prejudgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the efficient administration of justice.

*Flanagan v. United States,* 465 U.S. at 263, 104 S.Ct. at 1054. In accordance with the rule, a judgment limited to the issue of liability, where the assessment of damages or other relief remains open, is not final. *Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). Therefore, absent a statute, it is not appealable.

■ These principles apply to appeals from boards of contract appeals, of course, and we are not writing on a clean slate in this case. In *Teller Envtl. Sys., Inc. v. United States,* 802 F.2d 1385, 1389 (Fed. Cir.1986), we said that "an important focal point in ascertaining finality of a board's decision is the scope and extent of the contracting officer's decision." There, the contracting officer had determined both the contractor's liability and the amount of damages. Both issues were before the board, but it decided only the liability issue and remanded the determination of damages to the parties. This court had no jurisdiction over the appeal because the board had not completely decided the case before it.

Here, the administrative contracting officer likewise determined both liability (noncompliance with the Cost Accounting Standards) and the amount Teledyne owed the government. The board affirmed the determination of noncompliance (at least with respect to some components of pension cost), but did not decide whether the government had been overcharged or, if so,

by how much. Therefore, the board did not completely decide the case before it, and the decision appealed is not final. This is so even though the parties stipulated the principal issue on appeal to the board and it resolved that issue. The parties cannot confer jurisdiction on this court by limiting the scope of the issues to be decided by the board. " 'Want of jurisdiction ... may not be cured by consent of the parties....' " *Gould v. Control Laser Corp.,* 866 F.2d 1391, 1393 (Fed.Cir.1989) (quoting *Industrial Addition Ass'n v. Comm'r,* 323 U.S. 310, 313, 65 S.Ct. 289, 291, 89 L.Ed. 260 (1945)).

In *Fairchild Republic Co. v. United States,* 810 F.2d 1123 (Fed.Cir.1987), a contractor appealed a contracting officer's decision that the cost and pricing information submitted by the contractor violated the Truth in Negotiations Act, and the contracting officer's consequent unilateral reduction of the contract price. The board rejected the claim that the contracting officer had exceeded his authority, and the contractor appealed. This court held that it had no jurisdiction because the defective pricing violation found by the contracting officer had not yet been reached by the board. The board's decision conclusively resolved the issue of the contracting officer's authority to reduce the contract price, but it was not final because the board did not decide all the issues then before it.

Teledyne argues that in *Teller* and *Fairchild* there was still something very much alive before the board when its decisions were appealed to this court, so they do not apply here. We disagree. The board considered and rejected the contracting officer's determination that Teledyne was required to calculate pension costs separately for GPD and IPD under CAS 413.50(c)(2). Then it decided what factors should be included in Teledyne's pension cost allocation base under CAS 413.50(c)(1) and 403 and remanded to the parties for an exact formulation, retaining jurisdiction to resolve any disagreement. The allocation method and amount Teledyne owes the government were determined by the con-

tracting officer, but they were not resolved by, and are still pending before, the board.

The decision to remand is not a final, appealable order. According to *Cabot Corp. v. United States*, 788 F.2d 1539, 1543 (Fed.Cir.1986),

> Where, as here, the trial court remands to the administrative agency for additional findings, determination and redetermination, the remand order is not appealable even though the order resolves an important legal issue such as the applicable standard.... This result comports with the policies underlying the finality rule and in particular avoids unnecessary piecemeal appellate review without precluding later appellate review of the legal issue or any other determination made on a complete administrative record.

*See also Badger–Powhatan v. United States*, 808 F.2d 823 (Fed.Cir.1986). A "remand" to the parties and the contracting officer is even less final than a decision to remand to an administrative agency. *Cf. Teller*, 802 F.2d 1385.

Teledyne also contends that this case is analogous to *United States v. Boeing Co.*, 802 F.2d 1390 (Fed.Cir.1986), in which this court heard the appeal on the authority of *Dewey Electronics Corp. v. United States*, 803 F.2d 650 (Fed.Cir.1986). In *Boeing*, the contracting officer denied portions of the contractor's claims for reimbursement of pension costs, the contractor appealed, and the board held that the contractor was entitled to reimbursement and remanded to the contracting officer for a determination of the amount. In *Dewey*, the contracting officer did not respond to the contractor's claims for equitable adjustment of the contract price, and his failure to issue a decision was deemed a denial of the claims under 41 U.S.C. § 605(c)(5). On the contractor's appeal, the board found for the contractor on five of the claims, remanded them to the contracting officer for negotiation of the amount due, and denied the remaining four claims.

The important distinction between *Boeing* and *Dewey*, on the one hand, and this case, on the other, is "the scope and extent of the contracting officer's decision." *Teller*, 802 F.2d at 1389. In those cases, the contracting officers denied the contractors' money claims and therefore made no determinations of amount. Hence, the board's decisions remanding the contracting officers' determinations were final because they left nothing of the contracting officers' determinations for the board to decide. Here by contrast, both Teledyne's CAS noncompliance and the amount due the government were determined by the contracting officer, but not finally resolved by the board. Therefore, there is no jurisdiction here. *See Fairchild*, 810 F.2d at 1126; *Teller*, 802 F.2d at 1389.

*Dewey* differs further from this case because it involved multiple claims against the government. The court thought that final resolution of the contractor's entitlement under some claims should not await a determination of quantum on the other claims. Here, however, the issues of CAS compliance and monetary relief are part of a single claim that Teledyne's allocation of pension costs violates the Cost Accounting Standards. Appeal must await the final resolution of both issues.

Teledyne relies on the board's statement that "[a]ppellant shall submit its proposal to the contracting officer within 60 days after this decision has become final," 89–2 B.C.A. ¶ 21,780 at 109,592, arguing that this means the decision is final and appealable. This argument is without merit. There is no reason why the board's decision cannot be considered "final" for purposes of Teledyne's obligation to submit a proposed allocation base, while remaining non-final for purposes of our jurisdiction. In fact, the very next sentence of the board's opinion, "in the event of disagreement, the matter will be submitted to the board for final resolution," manifests that the board retained jurisdiction and did not finally resolve the question of entitlement. "Moreover, the agency's characterization of a decision is not determinative of the finality issue...." *Dewey*, 803 F.2d at 654. In the last analysis, it would be an inefficient and impermissible use of appellate resources and an interference with the board's proceedings to permit appeal of the CAS non-

compliance determination before the board has determined, by agreement of the parties or otherwise, what the proper allocation base is and the amount of Teledyne's liability. Absent these determinations, the board's decision is purely tentative and advisory. "Unlike the board, this court is constitutionally precluded from rendering advisory opinions." *Arctic Corner, Inc. v. United States,* 845 F.2d 999, 1001 (Fed.Cir. 1988).

Accordingly, it is ORDERED that Teledyne's appeal is DISMISSED.