**GREENHILL REFORESTATION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–802C.

United States Court of Federal Claims.

Dec. 19, 1997.

---

J. William Bennett, Portland, OR, for plaintiff.

Steven J. Abelson, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen, and Joseph A. Kijewski, Washington, DC, for defendant. Marcus R. Wah, Department of Agriculture, of counsel.

## OPINION

BRUGGINK, Judge.

Pending in this contract action is the Government's motion to dismiss under RCFC 12(b)(1) for lack of subject-matter jurisdiction. The plaintiff proceeds under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994) (CDA). The Government contends that the CDA has not been invoked properly because the Government did not issue a final decision on a claim within the meaning of the act and because the contractor did not properly certify its own claim. The matter is fully briefed, and oral argument is deemed unnecessary. For the following reasons, defendant's motion is denied.

## BACKGROUND [1]

Plaintiff, Greenhill Reforestation, entered into two contracts with the U.S. Forest Service. On March 18, 1994, Greenhill and the Forest Service entered into a contract to hand plant trees in areas within the Wallace Ranger District in Idaho (the "Wallace" contract). Four days later the two parties signed a similar contract for planting in the Avery Ranger District in Idaho (the "Avery" contract). Both contracts were for a base year (1994), with the possibility of two option years. Greenhill's work on both contracts was accepted after the 1994 planting season, and it was paid $217,105.90 for the Wallace contract and $109,771.52 for the Avery contract. The Forest Service exercised the option to extend to the 1995 season as to both contracts.

With respect to the work on the Wallace contract for 1995, Greenhill alleges that its work was accepted after Forest Service inspection and that it was entitled to payment in the amount of $145,103.80, broken up into three pay estimates. Greenhill was paid on its first estimate of $54,328.15, but the second and third pay estimates in the amounts of $80,839.50 and $9,885.75 were never paid.[2]

As to the Avery contract work, meanwhile, Greenhill alleges that it completed its work, had the work inspected and accepted, and was entitled to payment of $27,103.51. It was never paid this amount. Consequently, Greenhill contends that it is still owed $90,-725.25 on the Wallace contract and $27,103.51 on the Avery contract.

---

1. The facts are drawn from the complaint.

2. A check was issued by the U.S. Treasury for the second payment but was subsequently returned upon the Government's request before payment was negotiated. The third pay estimate was never processed.

On September 19, 1995, James Luzzi, Vice President of Greenhill, wrote the U.S. Department of Agriculture and the Contracting Officer (CO), reciting, among other things, the following:

> This represents a total of $117,828.76 being currently withheld from our company. We have fully fulfilled all of our contractual obligations on both of these contracts.... Please understand, the withholding of this much money is terribly damaging to our cash flow and is a threat to the continued ability of this company to continue in business. It may be a breach of these contracts, and may cause us to be unable to complete performance on other contracts. We have been too busy trying to just keep the bills paid and the company operating to have time to deal with these issues. We desperately need to be informed (1) what is the reason for withholding these payments, and (2) how soon can we expect to receive payment of these funds?

(Def.'s Mot. to Dismiss, app., at 1.)

Richard Simundson, the CO, wrote back on October 13, 1995, stating that the Forest Service had withheld the monies because "walk-through inspections [on the Wallace contract work] ... indicated that the 1995 planting quality was far below acceptable standards on all six units which were inspected. Additional inspection data was needed to confirm or refute the findings of this sample." (*Id.* at 2.) Citing the Inspection for Services clause, *see* 48 C.F.R. § 52.246–4, he notified Greenhill that the Wallace monies were being withheld in the event the contract price was reduced. (*See id.*) "In addition to this withholding an offset was placed against the Avery Ranger District funds as grounded in the common law right ... of every creditor to apply the monies of his debtor in his hands to extinguishment of the amounts due him from the contractor." (*Id.*) He concluded that "[u]ntil such time as our investigation is completed, I am withholding the amounts $90,725.25 and $27,103.51.... Consequently, the investigation of this matter, continues

as it appears there are many unanswered questions. Upon completion of this investigation a determination will be made as to disposition of funds." (*Id.*)

Greenhill concedes that it did not submit a certified claim on any of the contract payments before filing this complaint.[3] The complaint does not recite what action, if any, the CO took after the investigation and determination projected in the October 13 letter.

## DISCUSSION

■ The requirement in the CDA that claims "shall be in writing and submitted to the contracting officer for decision," 41 U.S.C. § 605(a) (1994), has been construed as a jurisdictional prerequisite to proceeding in this court. *See W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338–39 (Fed.Cir. 1983). In addition, although it is no longer a jurisdictional predicate, claims for over $100,-000 must be certified. *See* 41 U.S.C. § 605(c) (1994). Contractors do not have to file a claim, however, if what they are challenging in court is a government CDA claim. *See* 41 U.S.C. §§ 605(a), 609(a). The Government contends that there is no jurisdiction in the court to hear the pending complaint because there was neither a contractor claim nor a government claim to appeal.

Plaintiff offers two alternative theories in an effort to persuade the court that it can hear the complaint. The first is that the CO's withholding of payment on Greenhill's invoices constituted a government claim on which it can proceed here. Second, plaintiff contends that it submitted a valid CDA claim of its own to the CO prior to filing of this action and that the amounts claimed were below the threshold amount requiring certification.

### A. *Assertion of a Government Claim*

The CDA dictates that claims by the Government against a contractor shall be the subject of a written decision by the CO and shall inform the contractor of its appeal

---

**3.** A separate complaint was filed on August 11, 1997, arising out of essentially the same circumstances. It recites that a certified claim was filed on May 16, 1997. That complaint is pending under a separate docket number.

rights.[4] *See* 41 U.S.C. § 605 (1994); 48 C.F.R. § 33.211 (1994). The regulations address the need for a final decision in the event the agency seeks money from the contractor:

> For unilateral debt determinations, the contracting officer shall issue a decision as required by the clause at 52.2331–1, Disputes. Such decision shall include a demand for payment (see 33.211(a)(4)(vi)). No demand for payment under 32.610 shall be issued prior to a contracting officer's final decision. A copy of the final decision shall be sent to the appropriate finance office.

48 C.F.R. § 32.608(c) (1994). The regulations further provide:

> If a disbursing office is the responsible official for collection of a contract debt, or is notified of the debt by the responsible official and has contractor invoices on hand for payment, the disbursing officer shall make an appropriate setoff. The disbursing officer shall give the contractor an explanation of the setoff. To the extent the setoff reduces the debt, the explanation shall replace the demand prescribed in 32.610.

48 C.F.R. § 32.611.

■ In some cases, a CO final decision is deemed to have been made even if a setoff claim is not explicitly described by the CO in a "final decision" and even if it does not contain the boilerplate language that is usually present in CO final decisions. *See Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906–07 (Fed.Cir.1990). *But see Sharman Co. v. United States*, 2 F.3d 1564, 1570–71 (Fed.Cir.1993) (enforcing strict adherence to final-decision requirements such as appeal rights). In *Placeway*, the contractor submitted to the CO a written demand for payment of the contract price balance after the work was completed.[5] The CO decided that the balance due would not be released because the contractor did not complete the contract in a timely manner, subjecting the Government to potential delay claims from other contractors. The Federal Circuit agreed that the setoff was a government claim:

> [W]e conclude that the CO effectively made a final decision on the government claim. It was undisputed that Placeway had completed performance of the contract. Moreover, the contract price for the work completed was undisputed and was due upon completion of the work.... [T]he CO effectively granted the government's claim ... when he declined to pay Placeway the balance due on the contract. That the CO *might* decide Placeway owed more or less at a later time does not affect the finality of the decision made granting the government a sum certain....

*Id.* at 906; *see also Kit–San–Azusa v. United States*, 32 Fed.Cl. 647, 664 (1995), *aff'd in part*, 86 F.3d 1175 (Fed.Cir.1996) (table). The court, relying on *Teller Environmental Systems v. United States*, 802 F.2d 1385, 1388–89 (Fed.Cir.1986), reasoned that the CO decision was final because it identified the source of liability—untimely completion—and the amount of damages.[6] *See Placeway Constr.*, 920 F.2d at 907. Applying *Placeway* to the present facts leads to the conclusion that there was no government claim.[7]

---

**4.** The term "claim" is defined in relevant part by the applicable regulations as follows:

> (c) "Claim," as used in this subpart, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract....

48 C.F.R. § 33.201 (1994).

**5.** The written demand also requested adjustments for additional work and extended overhead expenses based on delays. The written demand was not certified.

**6.** In *Teller Environmental Systems v. United States*, 802 F.2d 1385 (1986), the Federal Circuit held that a CO's decision is final if it resolves the issues of liability and damage. *Id.* at 1388–89.

**7.** The Federal Circuit has not yet addressed this issue since its decisions in *Placeway* and *Sharman*. The court notes, however, that the CO's determination here is actually less definitive than that in *Sharman*, where the letter identified a sum certain but allowed the contractor to comment on the validity of liability and the amount. As noted below, the CO's October 13 letter contains no finding on liability; it merely states that a finding on liability is pending on the withheld payment.

Plaintiff relies on the October 13 letter from the CO as the final decision on the government setoff claim. The actual withholding took place earlier, of course, as the October 13 letter is in response to Greenhill's September 19 letter complaining of partial payment. The CO explained the reason for the withholding: to protect the Government's interests pending investigation of the acceptability of the planting done under the contract. Nowhere in the letter, however, is it asserted that the Forest Service was invoking the claim aspects of the CDA. The CO's October 13 letter is no more than a tentative determination. Indeed, the lack of finality of the withholding is explicit: "Until such time as our investigation is completed, I am withholding the amounts.... Consequently, the investigation of this matter, continues as it appears there are many unanswered questions. Upon completion of this investigation a determination will be made as to disposition of funds." (Def.'s Mot. to Dismiss, app., at 2.) Unlike *Placeway*, no liability is determined; the amounts stated are, in effect, withheld pending resolution.

As the defendant notes, moreover, it appears that the October letter tracks the "explanation" contemplated by 48 C.F.R. § 32.611 and not the claim described at § 608(c). Consequently, the October 13 letter is not a CO final decision on a government claim for the purposes of finding jurisdiction under the CDA.[8]

### B. Validity of Plaintiff's Claims under the CDA

The defendant, in its motion and reply, refers to the September 19 letter from the plaintiff as a claim; the court will not dispute

this characterization. The letter can be construed reasonably as a written assertion by the contractor seeking, as a matter of right, the payment of money in a sum certain. *See* 48 C.F.R. § 33.201 (1994). The CDA requires, however, that claims in excess of the threshold amount must be certified by an authorized person before being considered for final decision.[9] *See* 41 U.S.C. § 605(c)(1) (1994); *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 877 (Fed.Cir.1991). Plaintiff argues that the September 19 letter to the CO asserts two separate claims, each of which are below the threshold certification amount. Defendant counters that the letter represents one fragmented claim under the unitary-claim theory.[10]

The CDA recognizes the possibility of more than one claim arising from a single contract. *See* 41 U.S.C. § 609; *Placeway*, 920 F.2d at 907.

> To determine whether two or more separate claims, or only a fragmented single claim, exists, the court must assess whether or not the claims are based on a common or related set of operative facts. If the court will have to review the same or related evidence to make its decision, then only one claim exists.... On the other hand, if the claims as presented to the CO will necessitate a focus on a different or unrelated set of operative facts as to each claim, then separate claims exist that [may] avoid the certification requirement....

*Placeway*, 920 F.2d at 907. The Federal Circuit in *Placeway* emphasized that the court should not focus on the form of the submissions, but rather on their substance *at*

---

**8.** This means only that there is not the "claim" necessary for CDA jurisdiction. It does not mean that the Government cannot assert, by way of defense, that it is entitled to a setoff up to the amount of a plaintiff request for contract damages, assuming there is otherwise jurisdiction. *See Kit–San–Azusa*, 32 Fed.Cl. 647, 664 (1995), *aff'd in part*, 86 F.3d 1175 (Fed.Cir.1996) (table).

**9.** The threshold certification amount under section 604(c) was changed from $50,000 to $100,000 on October 13, 1994.

**10.** In addition, the defendant points out that even if two separate claims exist, the portion that

corresponds to the Wallace contract exceeds the threshold amount at the time the claim was submitted. It seems that both parties misread the history of section 605(c)(1). The CDA claim-certification threshold was amended on October 13, 1994, to increase the amount from $50,000 to $100,000. *See* Pub.L. No. 103–355, § 2351(b), 108 Stat. 3322 (1994). Plaintiff's claim letter is dated September 19, 1995. It is clear that the claims are made after the threshold was increased. Thus if plaintiff is correct that the claims are separate and not unitary, neither claim would require certification to satisfy the CDA.

*the time they were submitted to the CO. See id.* at 908 (citing *Contract Cleaning Mainte-nance, Inc. v. United States,* 811 F.2d 586, 591–92 (Fed.Cir.1987)).

 This test thus presents a dilemma not addressed in *Placeway.* What is the result when, from the contractor's perspective at the time of its demand, the amounts claimed appear to have no connection, but, in reality, they are linked by a previously unexpressed intention of the Government to withhold amounts from one contract to pay an offset on another?

Defendant is correct, in other words, that under the test cited in *Placeway* the two claims alleged here arise from the same operative fact: the adequacy of the work performed under the Wallace contract. This fact underpins the Government's claim against both payments. There is no reason, however, to find that the contractor suspected this connection. At the time of its claim letter, Greenhill had not been notified of the cross-contractual offset. Instead, for aught that it was aware, Greenhill possessed independent justification for each claim. The performance of the Wallace contract and payment on it was separate from performance and payment on the Avery contract.

Resolution lies in the need to apply the certification requirement in a way that is fair to the contractor, i.e., the contractor should not be held responsible for information of which it had no actual or constructive knowledge. The certification requirement, after all, constitutes a verification from the contractor's perspective at the time the claim was submitted to the CO. *See Contract Cleaning,* 811 F.2d at 591. Thus the court finds that the plaintiff's letter of September 19 contained two separate claims, neither of which exceeded the claim-certification threshold of $100,000. The claims are therefore adequate under the CDA, and the CO had authority to issue a final decision on those claims.[11]

CONCLUSION

Although there was no government claim here, there were two contractor claims. It was not necessary for Greenhill to certify its claim letter because the claims fell below the CDA threshold. The court therefore has subject-matter jurisdiction under the CDA. Accordingly, defendant's motion to dismiss the complaint is denied. The parties are directed to prepare and file a Joint Preliminary Status Report by January 23, 1998.

---

11.   Plaintiff's claim letter was dated September 19, 1995. While the CO's letter of October 13 did not constitute a final decision, the complaint in this matter was filed more than sixty days after the claims were submitted. They are thus deemed denied by the CO. *See* 41 U.S.C. § 605(c)(5).