In re ENERGY INSULATION, INC., Debtor.

JOURNEYMEN PLASTERERS PROTECTIVE AND BENEVOLENT SOCIETY LOCAL NO. 5, Appellant,

v.

ENERGY INSULATION, INC., Appellee.

Nos. 91 C 1487, 90 B 2005.

United States District Court,
N.D. Illinois, E.D.

June 23, 1992.

On Motion to Amend July 8, 1992.

David S. Allen, Joseph M. Burns, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for Journeymen Plasterers Protective and Benevolent Society Local No. 5, appellant.

Joel Alan Brodsky, Brodsky & Hoxha, Chicago, Ill., for Energy Insulation, Inc., appellee.

## MEMORANDUM AND ORDER

LINDBERG, District Judge.

On October 29, 1990, appellee Energy Insulation, Inc. ("Energy") filed a petition for relief under Chapter 11 of the United States Code ("Bankruptcy Code"). Before Energy filed its petition, it was a member of the Chicagoland Association of Wall & Ceiling Contractors, which had entered into a collective bargaining agreement with the Journeymen Plasterers Protective & Benevolent Society Local No. 5 ("Union"). Pursuant to the collective bargaining agreement, Energy is obligated to make contributions to the Health and Welfare Fund, Chicago Plastering Institute, Pension and Retirement Fund and the Apprentice Fund.

Since it filed its reorganization petition, Energy neither paid the contributions as required by the collective bargaining agreement nor sought interim or permanent relief from the terms of the contract pursuant to section 1113(c) or 1113(e) of the Bankruptcy Code. 11 U.S.C. § 1113. As a result, the Union filed a motion to compel the debtor to pay its post-petition employee benefits. On January 25, 1991, the bankruptcy court denied the Union's motion. The bankruptcy court categorized the payments as administrative expenses. Also, the court acknowledged that Energy was obligated to make the payments required by the contract until its rejection of the collective bargaining agreement was authorized. However, the court refused to enter an order requiring Energy to make the payments.

On February 11, 1991, the Union filed its Notice of Appeal. The Union contends that the bankruptcy court erred when it refused to enforce the debtor's collective bargaining agreement since the court's inaction effectively grants the debtor interim relief without compliance with the Bankruptcy Code. See 11 U.S.C. § 1113. The Union argues that section 1113(f) of the Bankruptcy Code imposes an affirmative duty upon the debtor to comply with its collective bargaining agreement.

### Discussion

Before reaching the merits of this bankruptcy appeal, this court must decide whether it has appellate jurisdiction. Appellate jurisdiction in this case is premised on 28 U.S.C. § 158(a) which authorizes district court review of "final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." As a general rule, a final order is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). However, the Seventh Circuit has suggested that "finality" is to be more liberally construed in bankruptcy cases than in other civil cases. *In re Jartran, Inc.*, 886 F.2d 859, 861 (7th Cir.1989); *In re Sax*, 796 F.2d 994, 996 (7th Cir.1986). Therefore, for purposes of bankruptcy appeals an order is considered to be final when it "finally determines" a creditor's position. *In re Sandy Ridge Oil Co.*, 807 F.2d 1332, 1334 (7th Cir.1986).

Even by applying this liberal definition of finality, this court cannot conclude that

an order which denies the Union's motion to compel the debtor to pay post-petition employee benefits is final. The Union urges this court to hear the appeal even if the bankruptcy order is not final. The Union contends that the order could be appealable as an interlocutory order because it is within the district court's discretion to hear an appeal from an interlocutory order. 28 U.S.C. § 158(a). Generally, the party appealing an interlocutory order must file a notice of appeal accompanied by a motion for leave to appeal. Fed.R.Bankr. P. 8001(b). Here, the Union did not file a motion for leave to appeal based on the erroneous assumption that the bankruptcy order in this case is final. Since the court determined that the bankruptcy court did not enter a final order, the Union's timely notice of appeal may substitute for the requisite motion for leave to appeal. *In re Allen*, 896 F.2d 416, 417 n. 1 (9th Cir.1990) (per curiam); Fed.R.Bankr.P. 8003(c). Therefore, it is within this court's discretion to hear the Union's interlocutory appeal.

■ Although neither the Bankruptcy Code nor the Rules provide any guidance for determining when an interlocutory appeal is appropriate, the standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district court to the court of appeals, is instructive in this matter. *In re Lifshultz Fast Freight Corp.*, 127 B.R. 418, 418 (N.D.Ill.1991); *In re Bowers–Siemon Chemicals Co.*, 123 B.R. 821, 824 (N.D.Ill.1991). The courts have devised a three part test which suggests that review of interlocutory orders should be granted where: 1) the appeal presents a controlling question of law; 2) over which there is substantial basis for difference of opinion; and 3) an immediate appeal may materially advance the outcome of the case. *In re Lifshultz Fast Freight Corp.*, 127 B.R. 418, 419 (N.D.Ill.1991).

■ The first element of the test is met. This appeal presents a controlling question of law, the interpretation of section 1113 of the Bankruptcy Code. The second element of this test is also met. Although the Seventh Circuit has not interpreted section 1113, other courts have interpreted this section and their decisions are conflicting. In *In re Murray Industries, Inc.*, 110 B.R. 585, 588 (Bkrtcy.M.D.Fla.1990), the bankruptcy court determined that section 1113 governs conditions under which the debtor-in-possession might modify or reject a collective bargaining agreement, leaving payment of employment-related pre-petition obligations to be governed exclusively by section 507(a)(3) of the Bankruptcy Code, which deals with claim priorities. The court also indicated that post-petition claims would be treated as administrative expenses under section 507(a)(1) of the Bankruptcy Code. The *Murray* court did not interpret section 1113 as requiring the court to compel the debtor to pay its post-petition benefits. On the other hand, the bankruptcy court in *In re GF Corporation*, Nos 490–00621 and 490–00622, slip op at 1, 2 (Bankr.N.D. Ohio 1990), ordered the payment of benefits as they fell due under the collective bargaining agreement, reasoning:

> The parties agree that there has been no modifications of the collective bargaining agreement pursuant to section 1113 of Title 11. Thus, those agreements remain in full force and effect and may not be unilaterally terminated or altered by the Debtor as to any provision. Fringe benefits under those agreements must be paid post-petition as they come due, just as wages must be paid as they come due post-petition.... These benefits must be paid post-petition as they come due unless and until the Debtor obtains an order under 1113 modifying the collective bargaining agreement.

Given these conflicting interpretations of section 1113, a substantial basis for difference of opinion exists on this issue.

The third element is also met; an immediate appeal may materially advance the outcome of this bankruptcy reorganization. The nature of the issue is such that, if the Union's interpretation of section 1113 is correct, the Union is entitled to an order requiring immediate payments. The alleged denial of timely payments to the Union can only be remedied by an interlocutory appeal, not by an appeal from a final

order following the confirmation of the reorganization plan. If the Union could not appeal until after the bankruptcy court approved Energy's plan for reorganization, the issue of timely payments would be rendered moot. The court, using this three part test as a guideline, determines that interlocutory appeal is appropriate in this case.

■ When hearing an appeal from a bankruptcy court, the district court sits as an appellate court. *In re Neis*, 723 F.2d 584, 588 (7th Cir.1983). The bankruptcy court's findings of fact are reviewed under a clearly erroneous standard and its legal conclusions are reviewed de novo. *Matter of Bonnett*, 895 F.2d 1155 (7th Cir.1989). Because the bankruptcy court's interpretation of section 1113 of the Bankruptcy Code is at issue, the court will review the bankruptcy court's ruling de novo.

Section 1113 of the United States Bankruptcy Code provides in part:

(a) The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section, "trustee" shall include debtor in possession), shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

. . . .

(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representative of the employees has refused to accept such proposal without good cause; and

(3) the balance of the equities clearly favors rejection of such agreement.

. . . .

(e) If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot.

(f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

■ Section 1113 of the Bankruptcy Code provides the exclusive means for a debtor-in-possession to reject or modify a collective bargaining agreement. 11 U.S.C. § 1113(a). In order to permanently alter the collective bargaining agreement, the debtor must negotiate with the Union to reach mutually satisfactory modifications which are "necessary" to permit the debtor's reorganization and provide the Union with all the "relevant information" it needs to evaluate the debtor's proposed changes. 11 U.S.C. §§ 1113(b)(1)(A) & (B). Additionally, a court is authorized to implement

interim changes in the terms of the collective bargaining agreement, following notice and a hearing, where such modifications "are essential to the continuation of the debtor's business or in order to avoid irreparable damage to the estate." 11 U.S.C. § 1113(e). Section 1113 sets forth the procedure whereby a debtor can obtain authorization to reject or modify the terms of a collective bargaining agreement. Unless and until a debtor follows section 1113's procedures and obtains bankruptcy court authorization to reject or modify, section 1113(f) requires it to abide by the terms of the collective bargaining agreement. The court in *In re Unimet Corp.*, 842 F.2d 879, 884 (6th Cir.), cert. denied, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988), stated that section 1113 "unequivocally prohibits the employer from *unilaterally* modifying *any provision* of the collective bargaining agreement." (emphasis in original).

Section 1113 of the Bankruptcy Code was enacted in response to the Supreme Court's decision in *National Labor Relations Board v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). See *In re Unimet Corp.*, 842 F.2d 879 (6th Cir.), cert. denied, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988); 130 Cong.Rec. § 8898 (daily ed June 29, 1984) (statement of Sen. Kennedy) (the intent of section 1113 was "to overturn the *Bildisco* decision which had given the trustee all but unlimited discretionary power to repudiate labor contracts"). In *Bildisco*, the debtor-in-possession unilaterally terminated provisions of its collective bargaining agreement before obtaining court authorization to reject its contract. 465 U.S. at 517–518, 104 S.Ct. at 1192. The National Labor Relations Board ("NLRB") found that the debtor had violated the National Labor Relations Act ("NLRA") by unilaterally changing the terms of its contract. The Supreme Court held "that from the filing of a petition in bankruptcy until formal acceptance, the collective bargaining agreement is not an enforceable contract within the meaning of NLRA § 8(d)." *Id* at 532, 104 S.Ct. at 1199. Therefore, Bildisco's unilateral termination of the collective bargaining agreement could not form the basis of an unfair labor practice charge.

Congress sought to remedy the effects of *Bildisco* with the passage of section 1113. Section 1113(f) provides that collective bargaining agreements cannot be unilaterally terminated or modified unless the debtor complies with the requirements set forth in section 1113. Section 1113(f) reverses that part of *Bildisco* which held that a trustee or debtor in possession was not legally bound to a collective bargaining agreement subsequent to the bankruptcy filing date. Section 1113 requires the debtor-in-possession to adhere to the terms of the collective bargaining agreement unless the court approves the application for rejection pursuant to section 1113(c) or grants interim relief under section 1113(e).

The Union contends that a requirement to make timely payments should be implied in section 1113 because Energy neither followed the procedures necessary for rejection of the collective bargaining agreement nor obtained interim relief from the bankruptcy court. Section 1113, however, does not contain a payment provision. Given the many provisions of the Bankruptcy Code which contain explicit "payment" language, it is difficult to conceive that Congress would leave to implication a requirement to make timely payments in section 1113. For example, section 1114 of the Bankruptcy Code provides for the payment of retiree benefits:

(e)(1) Notwithstanding any other provision of this title, the *debtor in possession or the trustee* if one has been appointed under the provision of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), *shall timely pay and shall not modify any retiree benefits*, except that—

   (A) the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section, or

   (B) the trustee and the authorized representative of the recipients of those

benefits may agree to modification of such payments,

after which *such benefits as modified shall continue to be paid by the trustee.*

11 U.S.C. § 1114(e)(1) (emphasis added). Other provisions of the Bankruptcy Code contain explicit "payment" language. See 11 U.S.C. § 726 (providing that the property of the estate in a Chapter 7 case shall be distributed "in payment of" claims in a specified order); 11 U.S.C. § 1129(a)(9)(A) ("with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim" for purposes of confirming a Chapter 11 plan); 11 U.S.C. § 1226(a) ("Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of the plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan"); 11 U.S.C. § 1326(b) ("Before or at the time of each payment to creditors under the plan, there shall be paid—(1) any unpaid claim of the kind specified in section 507(a)(1) of this title; and (2) if a standing trustee appointed under section 1302(d) is serving in the case, the percentage fee fixed for such standing trustee under section 1302(e) of this title"); 11 U.S.C. § 1326(b) ("Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan").

In light of the express payment language set forth in these provisions of the Bankruptcy Code, the court concludes that if Congress intended to include a timely payment requirement in section 1113, it would have done so expressly.

The court affirms the order of the bankruptcy court. The bankruptcy court recognized that the debtor remains liable for all obligations under the collective bargaining agreement unless and until the debtor-in-possession complies with the procedures set forth in section 1113. The bankruptcy court correctly treated the Union's motion as a request for payment of administrative expenses. See 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1). Section 503(a) provides: "An entity may file a request for payment of an administrative expense." The Bankruptcy Code does not provide when a request for payment of administrative expenses must be filed or ruled upon by the court. Given the Bankruptcy Code's ambiguity on this issue, Collier on Bankruptcy concludes that the bankruptcy court has discretion in determining when administrative expenses are to be paid:

The Code is ... unclear in some respects on whether and when it is appropriate to pay administrative expenses prior to confirmation or the winding up of the administration of the case and the distribution of all of the property of the estate. The timing of payment of such claims appears to be clearly within the discretion of the bankruptcy court. As to administrative claims other than requests for interim fees pursuant to section 331, some courts in chapter 11 have deferred payments until plan confirmation or liquidation, while other courts have allowed the earlier payment of administrative claims unless special circumstances dictate otherwise.

Lawrence P. King, ed, 3 Collier on Bankruptcy ¶ 503.01 at 503–5 (Matthew Bender, 15th ed 1991). The Union has made no argument that the bankruptcy court abused its discretion in refusing to order immediate payment of administrative expenses. The Union has instead argued that the requirement to make timely payments should be implied in section 1113. The court determines that Bankruptcy Judge Coar was not in error in denying the Union's motion to compel the debtor to pay its post-petition benefits.

Ordered: The order of the bankruptcy court is affirmed.

### ON MOTION TO AMEND

■ Appellant, the Journeymen Plasterers Protective and Benevolent Society Local No. 5 ("Union"), has filed a motion to amend the court's June 18, 1992 memorandum and order to provide for certification under 28 U.S.C. § 1292(b). The June 18, 1992 order affirmed the bankruptcy court's

order denying the Union's motion to compel the debtor to pay its post-petition benefits. The Union requests that the court make the appropriate findings under section 1292(b) to permit an immediate appeal to the Seventh Circuit Court of Appeals.

Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Appellant's motion is granted. This appeal presents a controlling question of law, the interpretation of section 1113 of the Bankruptcy Code. Given the conflicting interpretations of section 1113 as discussed in the court's June 18, 1992 order, a substantial ground for difference of opinion exists on this issue. In addition, an immediate appeal of the June 18, 1992 order may materially advance the ultimate termination of the litigation. If the Union's interpretation of section 1113 is correct, the Union is entitled to an order requiring immediate payment of its post-petition benefits. As discussed in the court's June 18, 1992 order, the alleged denial of timely payments to the Union can only be remedied by an interlocutory appeal, not by an appeal from a final order following the confirmation of the reorganization plan. If the Union could not appeal until after the bankruptcy court approved the debtor's reorganization plan, the issue of timely payments would be rendered moot. The three elements required for certification under section 1292(b) are met; interlocutory appeal is appropriate in this case.

ORDERED: The appellant Union's motion to amend the court's June 18, 1992 order to provide for certification under 28 U.S.C. § 1292(b) is granted.