# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2010

No. 09-30044

Charles R. Fulbruge III
Clerk

JOHN F. PEACOCK

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

John Peacock appeals the district court's dismissal of his Federal Tort Claims Act ("FTCA") suit against the Government for alleged breaches in the standard of care by both the New Orleans Veterans Affairs Medical Center and the Dallas Veterans Administration Medical Center. For the reasons set forth below, we AFFIRM.

**I**

Peacock underwent an angioplasty procedure of his left circumflex artery at the Dallas Veterans Administration Medical Center ("Dallas VA") by Dr. John Warner, a cardiologist on staff. Shortly after the surgery, Peacock experienced severe chest pain. A cardiac catheterization revealed that Peacock's left main

artery was dissected and his left anterior descending artery was occluded. Peacock was returned to surgery where an emergency double coronary bypass graft was performed. Peacock had a heart attack as a result of the arterial dissection and continues to suffer from severe congestive heart failure.

After pursuing an administrative claim with the Department of Veterans Affairs, Peacock filed suit against the United States under the FTCA, 22 U.S.C. § 2271 *et seq.*, alleging that Dr. Warner, an employee of the Dallas VA, breached the standard of care and caused his injuries. In answer to Peacock's complaint, the Government admitted that Dr. Warner was a federal employee at the time of Peacock's injury. The Government continued to assert that Dr. Warner was an employee of the Dallas VA in its response to Peacock's interrogatories, and stipulated in the pretrial order that the physicians, nurses and staff who provided Peacock treatment at the Dallas VA were all employees.

Less than a week before the trial was to begin, the Government discovered that Dr. Warner was not a federal employee. In fact, Dr. Warner was an employee of the University of Texas Southwestern Medical Center ("UTSWMC"), and merely worked at the Dallas VA pursuant to a contract between UTSWMC and the VA. The Government filed a motion to dismiss the claims against Dr. Warner for lack of subject matter jurisdiction, arguing that Dr. Warner's status as an independent contractor precluded suit under the FTCA. The district court denied the motion without prejudice and ordered sixty days of discovery regarding this issue. During this period, Peacock filed a motion for sanctions against the Government, arguing that due to his reliance on the Government's misrepresentations regarding Dr. Warner's employment status, he lost significant time and money in pursuing his claim.

At the end of the discovery period the Government re-urged its motion to dismiss the claims against Dr. Warner for lack of subject matter jurisdiction. The district court granted both this motion and Peacock's motion for sanctions.

No. 09-30044

In granting the sanctions motion, the district court ordered the Government to pay Peacock's costs and attorney's fees, and referred the matter to the magistrate judge for a calculation of reasonable attorney's fees.

Peacock filed the instant appeal of the district court's dismissal of his case after the district court entered a final judgment on both motions, but prior to the magistrate judge's final calculation of attorney's fees owed under the sanctions order. Peacock argues that the district court erred in determining that Dr. Warner was an independent contractor and therefore unable to be sued under the FTCA's waiver of judicial immunity for federal employees. In the alternative, Peacock argues that the Government should be judicially estopped from asserting that Dr. Warner was an independent contractor, after asserting in its answer and throughout the pendency of this litigation that Dr. Warner was a federal employee.

## II

As an initial matter, we must determine whether we have subject matter jurisdiction to hear this case. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (noting that courts may raise *sua sponte* issues of subject matter jurisdiction). Specifically, we must determine whether a "final decision" was issued in the district court that would permit our review on appeal. *See* 28 U.S.C. § 1291. A "final decision" generally ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *Catlin v. United States*, 324 U.S. 229, 233 (1945).

Pending before the magistrate judge at the time of this appeal was a determination of Peacock's attorney's fees, to be paid by the Government after the district court granted Peacock's motion for sanctions.[1] Generally, "a decision on the merits is a 'final decision' for the purposes of § 1291 whether or not there

---

[1] The district court has since issued an order accepting the magistrate judge's Report and Recommendation Regarding Quantum of Attorney's Fees.

remains for adjudication a request for attorney's fees attributable to the case." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03 (1988). Nevertheless, "[w]here . . . the demand for attorney's fees is itself part of the merits, the general [*Budinich*] rule does not apply." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 521 (5th Cir. 1994). A claim for fees is part of the merits when it is "an independent claim of one party against another that happens to be for fees," such as an attorney seeking judgment against his client. *Id.* at 521–22.

In the instant matter, the district court issued a final decision dismissing Peacock's claim on the merits as well as a final decision to award Peacock sanctions, including relevant attorney's fees. The only unresolved issue at the time of appeal was the *amount* of attorney's fees to be awarded. The Supreme Court has plainly stated that "an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final." *Budinich*, 486 U.S. at 201. Though the instant matter concerns attorney's fees awarded *against* the prevailing party, this wrinkle does not fit within the limited "final decision" exception for fees that are the subject of an independent merits claim. *Deus*, 15 F.3d at 521–22. Accordingly, this court has proper subject matter jurisdiction to hear an appeal on the merits of the district court's dismissal of Peacock's claim.

### III

We review *de novo* a question of whether an individual is an employee of the Government for purposes of the FTCA. *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). "[T]he United States, as sovereign, is immune from suits save as it consents to be sued." *Id.* However, "[u]nder the FTCA, Congress has waived sovereign immunity and has granted consent for the [G]overnment to be sued for acts committed by any 'employee of the Government while acting within the scope of his office or employment.'" *Id.* (quoting 28 U.S.C. § 1346(b)). Consent to be sued does not extend to the acts of independent contractors

No. 09-30044

working for the Government. *Broussard v. United States*, 989 F.2d 171, 174 (5th Cir. 1993) (citations omitted).

The key inquiry "in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." *Linkous*, 142 F.3d at 275. In *Linkous*, *id.* at 276, this court listed additional factors, drawn from the RESTATEMENT (SECOND) OF AGENCY § 220, as relevant to this determination:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

In the instant matter, as with the obstetrician at issue in *Linkous*, factors (a) through (d) weigh in favor of Dr. Warner being an independent contractor for the Dallas VA because of the nature of his work as a physician. "It is uncontroverted that a physician must have discretion to care for a patient and may not surrender control over certain medical details." *Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989).

5

No. 09-30044

On the other hand, factor (e) supports Peacock's contention that Dr. Warner is an employee of the Dallas VA, because the VA provided support staff, nursing staff, examination rooms, and medical supplies to Dr. Warner during the course of his work at the facility, as it does for physicians who are employees of the facility.[2] Factors (h) and (j) also support the conclusion that Dr. Wagner was an employee of the VA, as the Dallas VA is in the business of providing a wide range of medical services, such as cardiology, Dr. Wagner's specialty.

However, factor (f), the length of time for which the person is employed, supports classifying Dr. Wagner as an independent contractor. Dr. Warner's contract was for a short term (one year), renewable at the end of each term. Though Dr. Warner renewed his contract five times, renewing a short-term contract does not in and of itself create an employee relationship. *See Linkous*, 142 F.3d at 277 (ultimately finding independent-contractor status despite a working relationship spanning "several years"). Factor (g), Dr. Warner's salary, also weighs in favor if independent-contractor status. Dr. Warner was paid a fixed amount by UTSWMC to provide cardiology services at a number of hospitals, including the Dallas VA. The Government neither hired him nor directly paid his salary.

Finally, with regard to factor (i), the record reflects that the parties believed that they were creating an independent contractor, rather than employment, relationship. The contract between UTSWMC and Dallas VA explicitly stated that physicians, as employees and agents of UTSWMC, would not be considered VA employees. The Dallas VA explicitly disavowed retention of any control over the professional aspects of Dr. Warner's work. Furthermore,

---

[2] Unlike many private hospitals in Texas, the Dallas VA does hire some physicians as employees. Dr. Warner was, in fact, an employee of the VA from 1992 through 1996 as an intern and resident physician. However, Dr. Warner had not been on the VA's payroll since June 30, 1996.

the contract stated that UTSWMC would assume all liability for the acts or omissions of its physicians during the scope of their employment. As the *Linkous* court noted, if a physician believed he was becoming an employee of the Government, then there would have been no need for him to indemnify the Government for his negligence. *Id.*

Thus, our review of the *Linkous* factors leads us to conclude that Dr. Warner was an independent contractor of the Dallas VA rather than an employee, because "the power of the federal government to control [Dr. Warner's] detailed physical performance" at the Dallas VA was not sufficient to establish an employee relationship. *Linkous*, 142 F.3d at 275. As consent to be sued under the FTCA does not extend to independent contractors, see *Broussard*, 989 F.2d at 174, the district court correctly dismissed Peacock's FTCA action against Dr. Warner for lack of subject matter jurisdiction.

### IV

Peacock argues that the Government should be judicially estopped from claiming that Dr. Warner was an independent contractor because of the Government's prior assertions in its pleadings and court documents that Dr. Warner was, in fact, an employee of the Dallas VA. We review a district court's determination to invoke judicial estoppel for an abuse of discretion. *Hall v. GE Plastic Pacific PTE, Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).

Estoppel is rarely valid against the United States. *Linkous*, 142 F.3d at 277; *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997). Indeed, as the district court noted, the United States may not be subject to estoppel as to matters that would establish jurisdiction in a suit to which the Government has not consented. *Andrade v. Gonzales*, 459 F.3d 538, 545 n.2 (5th Cir. 2006); *see also Broussard*, 989 F.2d at 176. A district court is vested with authority to inquire at *any* time whether the conditions under which it may exercise its jurisdiction have been met. *Broussard*, 989 F.2d at 176. The Government's

erroneous admission that Dr. Warner was a federal employee cannot *make* him a federal employee, and therefore subject to jurisdiction under the FTCA, where the relevant factors in our inquiry indicate that he is an independent contractor.

Assuming estoppel would be a valid claim in the instant matter, "[i]n order to establish estoppel against the government, a party must prove affirmative misconduct by the government in addition to the four traditional elements of the doctrine."[3] *Id.* Peacock has not alleged facts to support a showing of affirmative misconduct by the Government with regard to Dr. Warner's employment status. The Government re-urged its motion to dismiss as soon as it received notification that Dr. Warner was not on the federal payroll. While the length of time it took for this information to come to light was unreasonably long, this is not an indication of willful misconduct on the Government's part. Thus, the district court did not abuse its discretion in rejecting Peacock's argument that the Government should be judicially estopped from claiming that Dr. Warner was an independent contractor.

## V

For the foregoing reasons, we AFFIRM.

---

[3] These traditional elements are: "(1) that the party to be estopped was aware of the facts, and (2) intended his act or omission to be acted upon; [and] (3) that the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury." *Id.*