# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 1, 2010

No. 07-60703

Charles R. Fulbruge III
Clerk

THOMAS L. CREEL,

Plaintiff–Appellee,

v.

UNITED STATES OF AMERICA,

Defendant–Appellant,

v.

LLOYD F. MERCER, M.D.,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, BENAVIDES, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Thomas L. Creel brought a medical malpractice action against Dr. Lloyd F. Mercer and the United States arising from Creel's treatment at the G.V. Montgomery Veterans Affairs Medical Center (VAMC) in Jackson, Mississippi. The district court dismissed Creel's claims against Mercer, concluding that Mercer was an employee of the federal government at the time of the alleged negligence and, consequently, entitled to immunity under the Federal Tort

No. 07-60703

Claims Act (FTCA).[1]  Because we conclude that Mercer was an independent contractor, we reverse and remand.

## I

Creel consulted with Mercer, his orthopedic surgeon, concerning the surgical replacement of his left knee.  After examining Creel, Mercer concluded that surgery was needed, and Creel agreed to the procedure.  Mercer performed the surgery at VAMC.  The morning after the surgery, Mercer was alerted that Creel's left leg was losing color and did not have a pulse.  Mercer then contacted Dr. Fred Rushton, a surgeon at the University of Mississippi Medical Center, for a consultation.  After numerous procedures under the care of Rushton, Creel's left leg was amputated above the knee.

Creel brought suit against the United States pursuant to the FTCA, alleging medical malpractice.  Creel later amended his complaint to add Mercer, Rushton, and University Surgery Associates, P.L.L.C. (University Surgery) as defendants. Rushton and University Surgery were later dismissed from the suit.

At all relevant times, Mercer had contracted with VAMC to provide "Orthopedic Surgeon Services . . . in accordance with the requirements of the contract."  The contract required Mercer to provide staff coverage for orthopedic surgery clinics, to provide attending staff responsibility for in-patient orthopedic care, and to supervise orthopedic residents.  The contract also required Mercer to perform all services "in accordance with VA policies and procedures and the regulations of the medical staff by laws of the VA facility . . . [and] under the direction of the Chief of Staff, and the Chief, Surgical Service."

---

[1] *See* 28 U.S.C. § 2679(b)(1) ("The remedy against the United States . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.").

The contract required the VA to supply "necessary personnel for the operation of the services contracted for at the VA." However, Mercer was to protect the "personnel furnishing services under this contract" by providing them with workers' compensation, professional liability insurance, health examinations, income tax withholding, and social security payments. The contract further provided:

> It is expressly agreed and understood that this is a nonpersonal services contract . . . under which the professional services rendered by the Contractor or its health care providers are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments. The contractor and its health-care providers shall be liable for their liability-producing acts or omissions.

The parties to the contract also explicitly agreed that the "contractor, its employees, agents, and subcontractors shall not be considered VA employees for any purpose."

The original contract provided Mercer an estimated payment of $1,104 per day for the initial portion of his contract and then $22,080 per month for the fiscal year beginning October 1, 2002. The United States paid him the exact amount of his invoices, and there were no withholdings from payments. The contract required Mercer to work from 8:00 a.m. to 4:30 p.m., Monday through Friday, and only required him to work other hours in an emergency.

The Government moved to dismiss the FTCA claim, arguing that Mercer was an independent contractor at VAMC, and Mercer moved to dismiss the claims against him, arguing that he was a federal employee. The district court granted Mercer's motion and denied the Government's, finding that Mercer was

a federal employee and therefore that Creel's exclusive remedy was against the United States pursuant to 28 U.S.C. § 2679(b). The district court later entered a final judgment of dismissal as to Mercer under Federal Rule of Civil Procedure 54(b). The Government timely appealed.

## II

We review de novo a district court's finding that an individual is an employee of the Government under the FTCA.[2] "[T]he United States as sovereign, is immune from suits save as it consents to be sued."[3] Pursuant to the FTCA, "Congress has waived sovereign immunity and has granted consent for the government to be sued for acts committed by any 'employee of the Government while acting within the scope of his office or employment.'"[4] The FTCA, however, does not cover acts committed by independent contractors.[5]

"The critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual."[6] In addition to this factor, in *Linkous v. United States*, we considered a number of other factors that the Restatement (Second) of Agency § 220 identifies as relevant.[7] These include:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;

---

[2] *Hebert v. United States*, 438 F.3d 483, 486 (5th Cir. 2006); *Linkous v. United States,* 142 F.3d 271, 275 (5th Cir. 1998).

[3] *Linkous*, 142 F.3d at 275.

[4] *Id.* (quoting 28 U.S.C. § 1346(b)).

[5] *Id.*

[6] *Id.*

[7] *See id.*

No. 07-60703

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.[8]

In this case, factors (a) through (d) weigh in favor of finding that Mercer was an independent contractor. Due to the nature of his work as an orthopedic surgeon, Mercer was engaged in a distinct occupation requiring a high degree of skill and performed work normally done by a specialist without supervision. Under the terms of the contract, the United States retained "no control over professional aspects" of Mercer's services. While Mercer was required to follow several VA rules and procedures and was supervised by the Chief of Staff and Chief of Surgical Service (Chief), VAMC did not intrude on the daily rendition of medical services or override Mercer's medical judgment regarding diagnosis and treatment. For example, in regard to the incident at issue, Mercer did not

---

[8]R ESTATEMENT (SECOND) OF AGENCY § 220 (1958).

discuss the type of surgery he was to perform on Creel with the Chief; the Chief was not present in the operating room while Mercer was performing the surgery; and Mercer made the choice of the type of procedure he performed based solely on his professional opinion.

Conversely, factors (e), (g), (h), and (j) support the conclusion that Mercer was an employee of the Government. VAMC provided the "instrumentalities, tools, and the place of work" for Mercer. Mercer was not paid on a fee-for-service basis. The contract specified an estimated yearly income that was based on Mercer being present at the VAMC Monday through Friday between 8:00 a.m. and 4:30 p.m. Mercer's contract did not provide for vacation, except for national holidays, and he was paid less during those months in which he took vacation. Moreover, the Government paid Mercer additional remuneration for any hours he worked in excess of the Monday through Friday schedule. In addition, VAMC, the principal here, is in the business of providing a wide range of medical services, including the orthopedic services provided by Mercer.

On the other hand, factor (f), the length of time for which the individual was employed, weighs in favor of independent contractor status. Mercer's contract was for a relatively short term (a maximum of one and a half years, including all options to extend its term), and Mercer had worked for only a few months at the time of Creel's surgery. In *Peacock v. United States*, we held that factor (f) supported independent contractor classification because the contract term was for a period of year, even though the individual had worked for the hospital for over five years.[9] Given the short duration of Mercer's tenure at the time of the incident and the contract duration, we conclude that this factor supports classifying Mercer as an independent contractor.

---

[9] — F.3d —, 2010 WL 537773, at *3 (5th Cir. 17 Feb. 2010).

No. 07-60703

Finally, factor (i), the relative beliefs of the parties, supports independent contractor status because the parties did not believe that they were creating an employer–employee relationship. Mercer's contract explicitly stated that the "contractor, its employees, agents, and subcontractors shall not be considered VA employees for any purpose" and that Mercer rendered his professional services in his "capacity as an independent contractor." The contract clearly provided that VAMC retained no control over the professional aspects of Mercer's work. Furthermore, Mercer's contract required him to provide professional liability insurance for himself and whomever he hired. As we observed in *Linkous*, "[i]f [the contractor] believed she was becoming an employee of [the Government], then there would have been no need for her to indemnify the government for her negligence."[10] Thus, factor (i) supports independent contractor status.

After considering all of the Restatement factors, we conclude that Mercer was an independent contractor. The "power of the federal government to control the detailed physical performance" of Mercer's services was insufficient to establish an employer–employee relationship. Therefore, the district court erred in ruling that Mercer was an employee of the United States. This being the case, the district court improperly granted Mercer's motion to dismiss and denied the Government's motion to dismiss.

*    *    *

For the foregoing reasons, we REVERSE the judgment of the district court, and REMAND with instructions to deny Mercer's motion to dismiss and grant the Government's motion to dismiss.

---

[10] *Linkous*, 142 F.3d at 277.