NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1367

RANDALL MAY INTERNATIONAL, INC.,

Plaintiff/Counterclaim Defendant-Appellee,

and

RANDALL MAY,

Counterclaim Defendant-Appellee,

v.

DEG MUSIC PRODUCTS, INC.,

Defendant/Counterclaimant-Appellant,

and

DYNASTY USA,

Defendant.

Peter R. Afrasiabi, Turner Green Afrasiabi & Arledge, LLP, of Costa Mesa, California, argued for all appellees.

Dennis G. Martin, Blakely, Sokoloff, Taylor & Zafman, LLP, of Los Angeles, California, argued for defendant/counterclaimant-appellant. With him on the brief was Willmore F. Holbrow, III.

Appealed from: United States District Court for the Central District of California

Judge Terry J. Hatter, Jr.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1367

RANDALL MAY INTERNATIONAL, INC.,

>Plaintiff/Counterclaim Defendant - Appellee,

and

RANDALL MAY,

>Counterclaim Defendant-Appellee,

v.

DEG MUSIC PRODUCTS, INC.,

>Defendant/Counterclaimant – Appellant,

and

DYNASTY USA,

>Defendant.

Appeal from the United States District Court for the Central District of California in case no. 05-CV-894, Judge Terry J. Hatter, Jr.

_____

DECIDED: May 11, 2010

_____

Before MICHEL, Chief Judge, NEWMAN and LOURIE, Circuit Judges.

MICHEL, Chief Judge.

This patent infringement and breach of contract case comes on appeal from the U.S. District Court for the Central District of California. The patent-in-suit, appellees

Randall May International, Inc. and Randall May's ("collectively "May") U.S. Patent No. 6,881,886 B2 (the "'886 patent"), claims a shoulder-mounted harness for holding a percussion instrument, typically a drum, upon the torso of a musician in a marching band. The case presents four issues for the court to decide: (1) whether this court has jurisdiction to hear this appeal under 28 U.S.C. § 1292(c); (2) whether the district court erred in its construction of independent claim 17 and dependent claim 19 of the '886 patent; (3) whether the district court erred in granting summary judgment of infringement to May and denying appellants DEG Music Products, Inc. and Dynasty USA's (collectively "DEG") cross-motion for summary judgment of non-infringement; and (4) whether the district court erred in its interpretation of a settlement agreement from a prior dispute over a patent other than the patent-in-suit and applying it to the infringement of the patent-in-suit. For the reasons set forth below, we (1) hold that we have jurisdiction under § 1292(c) to hear this appeal (2) reverse the district court's claim construction (3) reverse the district court's grant of summary judgment of literal infringement and (4) reverse the district court's grant of summary judgment on the breach of contract.

## PROCEDURAL HISTORY

May and DEG, competitors in the marching band supplies business, have a considerable history of litigation. In 2002, May sued DEG for infringement of U.S. Patent No. 6,329,583 B1 (the "'583 patent"). That suit was concluded via a settlement agreement (the "2003 Agreement") reached in March 2003. Of relevance to this appeal was a covenant contained within the 2003 Agreement in which DEG agreed not to infringe May's patents. In 2004, May accused DEG of breaching the 2003 Agreement

by infringing the '583 patent with a drum harness design that is not at issue in this appeal. That dispute was settled via an exchange of letters in June and July 2004, in which the parties agreed that a redesign of the accused harness in which the shoulder pieces were welded to the wings of a Y-shaped chest piece did not infringe the '583 patent and, consequently, did not breach the Agreement. However, that redesign is now accused of infringing May's '886 patent.

May filed this suit in the district court on September 14, 2005, asserting (1) two patent infringement claims against the new DEG product (2) a claim under the Lanham Act and (3) a claim for breach of the 2003 Agreement. DEG counterclaimed with antitrust and other claims based on conduct antedating the 2003 Agreement and its releases. On October 17, 2007 the district court awarded summary judgment against DEG for those claims based on conduct that occurred prior to, and was covered by, the mutual general releases and waivers in the 2003 Agreement. The district court then held a <u>Markman</u> hearing on January 14, 2008, and subsequently issued its claim construction order on April 11, 2008.[1]

May subsequently moved for summary judgment on its claim asserting literal infringement of the '886 patent, which the court granted on August 6, 2008.[2] The district court also granted summary judgment for May on its breach of contract claim, adjudging DEG to be in breach of the 2003 Agreement by (1) infringing the '886 patent and (2) asserting in its complaint antitrust and patent misuse claims that were barred by

---

[1] The order was altered on August 16, 2008 to correct a "scrivener's error", changing "and" to "or" in one phrase of the construction.

[2] Because the district court granted summary judgment based on literal infringement, it did not reach the question of whether DEG infringed the '886 patent under the doctrine of equivalents.

the mutual general releases in the 2003 Agreement.  Prevailing on each of these counts entitled May to seek attorneys' fees under a fee-shifting provision of the 2003 Agreement.  Finally, the district court also granted May summary judgment with respect to DEG's antitrust counterclaims and patent misuse affirmative defenses based on conduct postdating that 2003 Agreement.

DEG consequently withdrew its patent invalidity claims and May made the decision to press forward at trial on only the issue of its claims for damages for infringement of the '886 patent, willfulness, and breach of the 2003 Agreement.  However, before the trial could commence on its scheduled date of January 2009, DEG filed a motion applying to stay the trial pending an appeal pursuant to 28 U.S.C. § 1292(c).  The district court entertained briefing on the issue of the language of the parties' proposed permanent injunctions and final judgments and subsequently entered a final judgment on April 13, 2009.  Following the district court's entry of its final judgment, DEG appealed to this court, essentially seeking a writ of mandamus ordering a stay of the district court's trial on the damages issues.  We denied DEG's appeal on the grounds that it could not show that the district court abused its discretion by continuing on to trial on the damages issues.  Randall May Int'l, Inc. v. DEG Music Products, Inc., No. 2009-1367, 2009 WL 2355838, at *1 (Fed. Cir. July 30, 2009).  This appeal followed.

DISCUSSION

I. Jurisdiction Under 28 U.S.C. § 1292(c)(2)

As a threshold matter, May contends that the appeal should be dismissed because it claims that this court lacks jurisdiction to hear it under 28 U.S.C.

§ 1292(c)(2). According to May, § 1292(c) applies to appeals only in cases where the sole remaining issue to be tried is an accounting of damages on the patent claims. May asserts that, since other non-patent-related issues remain to be tried in this case (viz., damages in the breach of contract claims), § 1292(c) is not applicable and the court therefore lacks jurisdiction to hear the appeal.

Under 28 U.S.C. § 1295, this court has exclusive jurisdiction of an appeal from a "final decision" of a district court whose jurisdiction, in whole or in part, arises under an Act of Congress relating to patents. 28 U.S.C. § 1295(a)(1); see also Johannsen v. Pay Less Drug Stores Northwest, Inc., 918 F.2d 160, 161-62 (Fed. Cir. 1990). Furthermore, under 28 U.S.C. § 1292(c):

> The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—
>
> (1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and
>
> (2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

28 U.S.C. § 1292(c). Subsection (2) of § 1292(c) forms the basis of May's objection to this court's jurisdiction. Section 1292(c)(2) is a patent-specific appellate provision that provides exclusive jurisdiction to this court in appeals from final judgments in infringement actions which would be otherwise appealable except for a determination of damages. See Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C., 482 F.3d 1347, 1353 (Fed. Cir. 2007). May contends that this subsection is not generally applicable to appeals where all that remains is an accounting of damages.

Rather, argues May, it is applicable only to cases where all that remains is an accounting of infringement damages. May acknowledges that a patent accounting remains to be made in the district court (the patent infringement damages and willfulness claims). But May asserts that because there also remains an accounting to be made with respect to damages for the breach of contract claim, § 1292(c)(2) does not apply, and this court consequently lacks jurisdiction to hear this appeal.

In its "Final Judgment Except for an Accounting", the district court wrote, in relevant part:

> This is a final judgment except for an accounting pursuant to 28 U.S.C. § 1292(c)(2) because only the following issues remain to be tried to a jury: (a) damages for DEG's breach of contract; (b) damages for DEG's patent infringement; and (c) whether DEG's patent issue was willful.

Thus the district court makes explicit that there remain no liability issues with respect to the patent infringement claim, nor any other relief, such as injunctive relief, that remains to be adjudicated by the district court, either of which would preclude jurisdiction under § 1292(c). See Ultra-Precision Mfg. Ltd. v. Ford Motor Co., 338 F.3d 1353, 1356-57 (Fed. Cir. 2003). Neither does there remain to be adjudicated any liability issue with respect to the breach of contract claim; only trial on the amount of damages remains to be conducted by the district court with respect that claim.

It is uncontested by the parties that a determination of damages on the infringement claim has yet to be made by the district court. Moreover, although the district court has yet to determine whether DEG's literal infringement was willful, such a pending determination of willfulness by the district court does not destroy our jurisdiction under § 1292(c)(2). See Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1337 (Fed.

Cir. 2009) (Court has jurisdiction under § 1292(c)(1) and (2) when willfulness and damages determinations remain pending in district court) .

This court's jurisprudence has been crystal clear on the issue that jurisdiction under § 1292(c) does not exist when any issue other than a damages accounting exists in a patent case below. See, e.g., Pause Tech. LLC v. TiVo Inc., 401 F.3d 1290, 1293 (Fed. Cir. 2005) (finding no jurisdiction when patent invalidity claim not adjudicated); Nystrom v. TREX Co., Inc., 339 F.3d 1347, 1351 (Fed. Cir. 2003) (finding no jurisdiction when invalidity and unenforceability counterclaims remain pending at the district court); Stewart Sys. Inc. v. Baking Tech. Systems, Inc., 41 F.3d 1519, 1519 (Fed. Cir. 1994) (finding no jurisdiction in appeal from adjudication of two of three patents-in-suit). What is less clear is whether jurisdiction exists under § 1292(c)(2) in a case where an accounting remains to be performed not only on the patent claims, but also on a non-patent related claim.

May enlists Johannsen in support of its argument that no jurisdiction exists for this court to hear DEG's appeal because there is an outstanding non-patent related accounting yet to be determined by the district court. 918 F.2d at 160. However, Johannsen is distinguishable from the instant case. The plaintiff in Johannsen alleged patent infringement and federal and state unfair competition claims. Id. at 161. The district court ruled against the plaintiff on the infringement claims, but for the plaintiff on certain of the unfair competition claims. Id. Before damages or injunctive relief could be adjudicated by the district court, the plaintiff and defendants both appealed the judgment to this court, claiming jurisdiction under § 1292(c)(2). Id. Thus, in Johannsen, unlike in the current appeal, there was no finding of infringement, nor was there any

pending accounting of damages for a patent-related claim.  On the contrary, the only claims pending adjudication in the district court in Johannsen were a damages accounting and injunctive relief with respect to the non-patent-related unfair competition claims.  Consequently, this court ruled that it lacked jurisdiction to hear this case under § 1292(c)(2).  According to the court:

> We see no reason why the introduction of non-patent claims should trigger § 1292(c)(2) and change the basic interplay between that statute and § 1295.  If § 1292(c)(2) does not apply to the denial of a pure patent claim- for want of an impending patent accounting — then the introduction of other claims, which do not offer the prospect of a patent accounting, cannot matter. It is irrelevant that those other claims offer the prospect of non-patent accountings. The statute's purpose was "to prevent a great burden of expense to litigants in actions to determine the validity of patents, where an accounting is involved ... [Under the statute an] appeal can be taken ... so as to obviate the cost of an accounting in the event the case is reversed on appeal."  H. R. Rep. No. 1890, 69th Cong., 2d Sess. 1 (1927).  In enacting § 1292(c)(2) and its predecessors, Congress expressed a desire to allow interlocutory appeals over the prospect of an unnecessary patent accounting, not just any accounting.

Id. at 163 (emphases in original).  Thus, a pending non-patent accounting cannot, by itself, trigger jurisdiction under § 1292(c)(2) as a substitute for a non-existent pending accounting related to a failed patent infringement claim.  Indeed, as we noted above, such non-patent related accountings are irrelevant to the interplay between § 1292(c) and § 1295.

Such is not the instance here.  In the case at bar, the district court found that DEG had literally infringed May's '886 patent and issued final judgment to that effect, staying only the damages accounting and willfulness determination on the patent- related claims.  These are the necessary and sufficient conditions to trigger jurisdiction under § 1292(c)(2).  The existence of a pending damages accounting in the breach of

contract claims is simply irrelevant to the issue of whether this court has jurisdiction over the appeal of the patent infringement issue in the district court below.

We therefore hold that this court has jurisdiction to hear the appeal of the patent infringement claims under § 1292(c)(2). However, whether this court has jurisdiction to also hear the breach of contract claims is a somewhat more difficult issue.

Section 1295 explicitly requires that the decision of the district court be "final." 28 U.S.C. § 1295(a)(1). The accounting that remains to be performed with respect to the breach of contract claims in this case does not fall under the explicit jurisdictional aegis of § 1292(c)(2). Under the latter statute, an "accounting" refers to infringement damages pursuant to 35 U.S.C. § 284. 28 U.S.C. § 1292(c)(2); see also Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 n.2 (Fed. Cir. 2001). The question, therefore, is whether this court's jurisdictional power to hear the infringement claims under § 1292(c) extends as well to the breach of contract claims for which an accounting has yet to be determined. We hold that it does.

In Majorette Toys (U.S.) Inc. v. Darda, Inc. U.S.A., we held that we had jurisdiction to hear an appeal under § 1292 in a case in which a final judgment of patent validity, infringement, and attorneys' fees had been awarded and damages and injunctive relief had been granted, although no accounting of the attorneys' fees had yet been performed by the district court. 798 F.2d 1390, 1391 (Fed. Cir. 1986). According to the court:

> If an appeal in a patent case can come to this Court under § 1292(c)(2) after validity and infringement are determined but prior to determining damages, it makes no sense not to allow an appeal after validity, infringement, and damages are ascertained, and an award of attorney fees granted, even though the exact amount of attorney fees (and costs) has not been precisely ascertained. If any of the trial court's holdings of

validity, enforceability, or infringement is overturned, there will, in all likelihood, be no occasion to quantify, let alone award, attorney fees. Similarly, such quantification will be irrelevant if on appeal this Court determines that it was an abuse of discretion to award attorney fees at all. Accordingly, allowing the present appeal will prevent loss of time and expense….

Id.

By contrast, in OEA, we held that when there had been no finding of infringement in the district court, the court lacked jurisdiction to hear an appeal when an accounting of attorneys' fees awarded by the district court had not been performed. 269 F.3d at 1340. In OEA, the alleged infringer sought declaratory judgment of invalidity and noninfringement against the patentee. Id. at 1342. After entry of partial summary judgment of invalidity against the patentee, the plaintiff filed a motion for attorneys' fees, and the district court agreed, deeming the case exceptional under 35 U.S.C. § 285 because of the patentee's inequitable conduct before the USPTO. Id. Prior to determination of the amount of the attorneys' fees by the district court, the defendant appealed to this court, claiming jurisdiction under § 1292(c)(2). Id.

We disagreed, holding that this court lacked jurisdiction to hear the case under § 1295. Specifically, we held that a decision to award attorneys' fees for which there had not yet been an accounting did not render the judgment of the case "final" as required by § 1295 and that, therefore, this court lacked jurisdiction to hear the appeal. Id. at 1346. However, in a footnote, the court noted that § 1292(c)(2) did not apply to the case because there had been no finding of patent infringement by the district court. Id. at 1342 n.2. Moreover, the court in OEA explicitly distinguished the case before it from Majorette Toys, in which there had been a judgment of infringement in the district court and, consequently, jurisdiction existed under § 1292(c)(2). Id. at 1346.

Although there is no precedential opinion of this court that is squarely on point, the jurisprudence of this court inferentially points to our having jurisdiction under § 1292(c)(2) extending to the breach of contract claims in the instant appeal. In OEA, this court held that it lacked jurisdiction under § 1295 to hear a case in which attorneys' fees had been awarded, but not yet accounted, and likewise lacked jurisdiction under § 1292(c)(2) because there had been no judgment of infringement in the district court. However, when, as in Majorette Toys, jurisdiction existed under § 1292(c)(2) because there had been a judgment of infringement in the court below, this court also had jurisdiction under that statute to hear the appeal on the matter of attorneys' fees which had not yet been accounted. Thus, when jurisdiction under § 1292(c)(2) is created by a final judgment of patent infringement in the district court, even though an accounting of infringement has not yet been performed, the court can also hear an appeal of related judgments in the case, even if an accounting of damages related to the non-patent claims has not been performed either. We therefore hold that this court has jurisdiction under 28 U.S.C. § 1292(c)(2) to hear this appeal with respect to both the infringement and the breach of contract claims.

Such a holding makes sense in light of the recognized purpose of §§ 1295 and 1292. The purpose of the final judgment rule embodied in § 1295 is to avoid piecemeal litigation and permit appeals only from final judgments, i.e., a judgment that "ends litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233 (1945). At the same time, § 1292(c) seeks to promote judicial economy by sparing the time and expense of determining damages for patent infringement and the losses incurred when recoveries are ultimately denied by

reversal of decrees on the merits.  McCullough v.  Kammerer Corp., 331 U.S. 96, 97 (1947) (referring to the statutory predecessor of § 1292).  Consequently, since we have jurisdiction over the patent infringement claims under § 1292(c)(2) and, since only an accounting remains on the breach of contract damages, we have jurisdiction to hear this appeal.

Furthermore, we have additional jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) and (c)(1).  As part of its order granting May's motion for summary judgment, the district court enjoined DEG from making, using, manufacturing, importing, exporting, selling, loaning, giving away, advertising, or offering to sell the infringing harness, or providing replacement harnesses or harness parts for the infringing harnesses to any of DEG's endorsees or drum corps.  The district court's order is consequently appealable as an order granting injunctive relief pursuant to §§ 1292(a)(1) and (c)(1).  See Randall May Intern., Inc. v. DEG Music Products, Inc., No. 2009-1367, 2009 WL 2355838, at *1 n.1 (Fed. Cir. July 30, 2009).

## II. The District Court's Claim Construction

We turn next to the district court's construction of the claims of the '886 patent.  Claim construction is a matter of law which we review without deference.  Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1371 (Fed. Cir. 2005).  When exercising the power to review claim construction, this court determines the meaning and scope of the relevant claim language and decides whether the district court's determination of the meaning and scope of the relevant claim language is coterminous with that construction.  Where it is not, the district court has erred in its construction of the claims.  Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111,

1115 (Fed. Cir. 2004).  However, in reviewing a district court's claim construction, this court takes into account the views of the trial judge.  Nazomi, 403 F.3d at 1371.  Though we review those views and the record de novo, "common sense dictates that the trial judge's view will carry weight."  Id. (quoting Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (Plager, J., concurring)).

The district court issued its claim construction order on April 11, 2008.  At issue in this appeal are independent claim 17 and dependent claim 19 of the '866 patent.  The district court construed these claims as follows:

| Claim 17 of the '886 Patent | Construction |
| --- | --- |
| A shoulder supported harness assembly for supporting percussion instruments, comprising: | A harness device that allows the user to support a percussion instrument. |
| a shoulder supported carrier structure for supporting percussion instruments having changeable or adjustable shoulder supporting members for securing said structure on the shoulders of a user; and | The piece of the device that connects on the user's back to the back member and which then sits on the user's shoulders and performs the function of supporting the balance of the device while allowing the user to adjust the upper section of the device relative to the lower section and to replace, remove or substitute the shoulder supporting members with other shoulder supporting members of different sizes, |
| a back member that spans across and is secured to each of the shoulder supporting members. | A back bar that spans across the user's back to connect to each end of the shoulder supporting members. |

| Claim 19 of the '886 Patent | Construction |
| --- | --- |
| The securing mechanism from claim 17 wherein the securing mechanism locks the orientation of the shoulder supporting members and the back member. | The securing mechanism refers to a locking mechanism that is applied to the back member and shoulder supporting members such that they are affixed together in a manner that precludes any change in orientation, |

i.e., they are welded together or otherwise locked.

DEG argues that the district court erred in its claim construction because it failed to define the claim limitation of "changeable or adjustable shoulder supporting members." Specifically, argues DEG, the court erred in removing the "adjustability" feature of the "shoulder supporting members" and thus broadened the scope of the claim to cover any adjustable drum carrier borne on the shoulders of the drummer. According to DEG, the court erroneously applied the limitation of "adjustability" to the carrier as a whole, rather than to the shoulder pieces specifically. Consequently, under the district court's claim construction, as long as the adjustability feature can be found somewhere on the harness such that the upper section can be adjusted relative to the lower section, the adjustability limitation of the claim is met.

Since the district court provided no explanation of the reasoning behind its claim construction, and since we review claim construction de novo, we look first to intrinsic evidence in construing the claims, i.e., the language of the claims themselves, the written description portion of the specification, and the prosecution history. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). The critical claim language in claim 17 is "a shoulder supported carrier structure … having changeable or adjustable shoulder supporting members for securing said structure on the shoulders of a user." The language of the claim expressly teaches more than one "shoulder supporting member" and this language most clearly maps onto those portions of the harness that support the harness over the shoulder, viz., the two arched shoulder pieces. These likewise reasonably correspond to the "shoulder straps" described in the specification of the '886 patent. The chest piece and the back bar can be excluded from

this claim limitation because they are singular pieces and do not come into contact the shoulders of the drummer. Furthermore, the back bar is separately defined in the following limitations of the claim. The additional chest pieces and the drum carrier brackets comprise the remainder of the "shoulder supported carrier structure" of claim 17.

Moreover, the claim language teaches that the shoulder supporting members should be "changeable" or "adjustable": these terms immediately precede the term "shoulder supporting members" and the only reasonable construction, therefore, is that these shoulder supporting members themselves, rather than the entire assembly, should be adjustable or changeable. And, in the specification of the '886 patent, the "shoulder straps" which correspond to the shoulder supporting members of claim 17, are not immovably or irretrievably fixed to the back bar and other portions of the supporting carrier, but rather are adjustable or removable so as to be interchangeable with other shoulder straps. For example, the specification describes one preferred embodiment in which the: "[v]est portion (the remainder of the carrier corresponding to the chest pieces) is removably secured to [the] shoulder straps by screws or bolts and has a pair of J-rod receptacles secured by screws or bolts." Likewise, a second embodiment is described in which the:

> [b]ack support or back member as shown in this figure is removably secured to shoulder straps by screws bolts or threaded fasteners and has padding. Bolts extend out from the removable back member, and extend into elongated slots located in the shoulder straps to allow for width adjustment on one or both shoulder straps. Alternately slots may be incorporated into the back member, and a square neck carriage bolt may be used in prevent rotation of the bolt when tightening the nut. The back member may be secured to removable shoulder straps. Removable shoulder straps of various sizes can be used to accommodate different size users.

Vest portion is adjustably and removably secured to shoulder straps by screws or bolts which extend through elongated slots which permits adjustment of the straps relative to vest portion.

And in every other embodiment described in the specification, the shoulder straps are described and depicted as being changeable or adjustable (or both). Even in those embodiments wherein the shoulder straps are spot welded to the back bar, they are still adjustable or removable with respect to the anterior vest portion of the harness.

We hold, therefore, that the district court erred in its construction of claim 17 (and, consequently, in its construction of dependent claim 19 as well). The district court's elision of the claim limitation (supported by the specification) that the shoulder supporting members are either changeable or adjustable is legal error because all the limitations in a claim must be considered meaningful. Cablestrand Corp. v. Wallshein, 29 F.3d 644 (Fed. Cir. 1994). We therefore amend the district court's language in the portion of its construction of Claim 17 which reads:

> The piece of the device that connects on the user's back to the back member and which then sits on the user's shoulders and performs the function of supporting the balance of the device while allowing the user to adjust the upper section of the device relative to the lower section and to replace, remove or substitute the shoulder supporting members with other shoulder supporting members of different sizes

to read:

> The adjustable or changeable pieces of the device that rest on the user's shoulders and perform the function of supporting the balance of the device and which connect the back member, situated against the user's back, with the upper portion of the device that rests on the user's chest.

### III. The District Court's Grant of Summary Judgment for May and Denial of DEG's Motion for Summary Judgment of Literal Non-Infringement.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether summary judgment was appropriate, we view the evidence in a light most favorable to the opposing party and resolve doubts in its favor. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998).

DEG's Dynasty P20-DAST V-Bar Snare Drum Carrier (the "harness") is one of the accused devices at issue in this appeal and is typical in all relevant respects. The harness consists of two curved shoulder pieces, each of which is welded to an end of the horizontal back bar at the rear of the device. The curved shoulder pieces arc forward over the wearer's shoulders where each is welded to an arm of a Y-shaped chest piece in front. The Y-shaped chest piece is bolted in turn to a triangular middle chest piece through one of a series of holes in each. The middle chest piece is bolted in turn to an oblate lower chest piece via a series of three elongate slots in the lower portion of the middle chest piece. Finally, each of the two J-shaped drum carrier brackets is bolted to the lower chest piece via one of several pairs of holes in the lower chest piece.

The harness is adjustable to the drummer's height in several ways: (1) by selecting different holes by which to bolt the Y-shaped chest piece to the middle chest piece; (2) by tightening the three bolts connecting the middle and lower chest pieces at different positions along the slots in the middle chest piece; (3) by choosing different

pairs of holes by which to attach the drum carrier brackets to the lower chest piece; and (4) by adjusting the length of the legs of the drum carrier brackets at the point of their attachment to the lower chest piece. Most importantly for the purposes of this appeal, the back bar, shoulder pieces, and Y-shaped chest piece of the accused devices are all welded together, and consequently form a fixed, inflexible, and non-adjustable unit. Consequently, the shoulder supporting members of DEG's accused device are neither changeable nor adjustable. True, the entire welded structure (i.e., the back bar, shoulder members, and Y-shaped chest piece combined) could be removed from the remainder of the harness and interchanged with another such piece. But the language of both the claim and the specification expressly teaches that the shoulder supporting members/shoulder straps are themselves adjustable or changeable. In DEG's device, they are not.

Given our new construction of Claim 17 supra, DEG's accused device cannot reasonably be said to literally infringe May's '866 patent. The '866 patent discloses shoulder supporting members that are changeable or adjustable, whereas those of DEG's harness are not adjustable and cannot be changed without simultaneously jettisoning the back bar and Y-shaped chest piece at the same time. Literal infringement requires that the accused device literally embodies every limitation of the claim. Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1370 (Fed. Cir. 2000). Since the DEG harness' shoulder supporting members do not embody Claim 17's limitations of being adjustable or changeable, they do not literally infringe the '866 patent. Consequently, we reverse the district court's grant of summary judgment of

literal infringement to May and also reverse the district court's denial of DEG's motion for summary judgment of literal non-infringement.

IV. The District Court's Interpretation of the 2003 Agreement

Finally, DEG argues that the district court erred in its interpretation of the 2003 Agreement. Although the holding above renders this issue moot, in the interests of completeness, we will address it.

The language of the 2003 Agreement at issue states:

> DEG Music .... agrees not to manufacture, distribute, or sell, directly or indirectly, any products that infringe the '583 Patent or any and all Letters Patent, which may be granted in the United States and all foreign countries, and any reissue, reexamination, continuation, contlnuation-in-part, division or extension thereof.

The 2003 Agreement expressly adopts California law. The district court found that the relevant language of the 2003 Agreement was clear and unambiguous and that the 2003 Agreement prohibits DEG from infringing any and all patents (including the '886 patent), not just the '583 patent and its lineage. Consequently, the district court granted summary judgment of breach of contract against DEG.

DEG advances the argument that the district court erred in not considering parol evidence offered in the form of a declaration by DEG's president, Mark Schafer (the "Schafer declaration"). California law requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 442 P.2d 641, 645. (Cal. 1968). Under California law:

> 'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and

unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' To determine whether offered evidence is relevant to prove such a meaning the court must consider all credible evidence offered to prove the intention of the parties. 'If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, is 'fairly susceptible of either one of the two interpretations contended for', extrinsic evidence to prove either of such meanings is admissible.

Delta Dynamics, Inc. v. Arioto, 446 P.2d 785, 787 (Cal. 1968) (quoting Pacific Gas, 442 P.2d at 645). Furthermore:

Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms.

Pacific Gas, 442 P.2d at 645.

Accordingly, the court was required to consider whether the parol evidence offered was credible to prove the intentions of May and DEG with respect to the 2003 Agreement and to define the terms of the contract. There is nothing in the record to suggest that the court considered whether the parol evidence offered was credible to demonstrate the intentions of the parties, merely the finding by the district court that the language of the 2003 Agreement was clear and unambiguous. Moreover, an interpretation of the 2003 Agreement to mean that DEG contractually agreed that it would never infringe any patent that ever issued to May, anywhere, and until the end of time, is plainly unreasonable. Likewise, a similar interpretation of the 2003 Agreement to mean that DEG agreed never to contest the validity of any patent that ever issued to May is similarly absurd and not a provision to which DEG would have reasonably agreed. Rather, we interpret the contract to mean that DEG agreed not to challenge

May's '583 patent and its lineage or any of May's patents that were extant at the time of the 2003 Agreement's execution. We therefore hold that patents granted to May subsequent to the 2003 Agreement and not in the lineage of the '583 patent, including the '866 patent which issued in April 2005, were not within the contemplation of the contract. Consequently, we reverse the district court's summary judgment of breach of contract.

## CONCLUSION

For the reasons set forth above, we: (1) reverse the district court's claim construction of claims 17 and 19 of the '886 patent; (2) reverse the district court's summary judgment of literal infringement; and (3) reverse the district court's summary judgment of breach of contract.

## REVERSED